SAUNDERS BURGESS, APPELLANT VS. JOHN M. GRAY, ET AL., RESPONDENTS.

1. The 2d section of the act of Congress of the 3d March, 1807, (2 U. S. Statutes at large, 440) only directs the board of commissioners to confirm such claims as may be brought within its provision, by evidence produced before them; and does not import a present confirmation, by the direct action of Congress upon the claim.

2. Until an inchoate title, originating under the Spanish Government, has been confirmed, it has no standing in a court of law or equity.

Burgess vs. Gray, et al.

## APPEAL from Jefferson Circuit Court.

GARLAND & KING, for appellant.

1. The appellant claims title by virtue of the act of 1807, and the respondent by virtue of pre-emptions taken under acts of Congress; and as Congress had parted with the title, and it belongs to one or the other, therefore Congress has no further claim to it. It is purely a controversy between citizens of the same State, and the appellant contends, first, that when those pre-emptions were taken by respondents, the title of the land was in him and that Congress had no title, and therefore they were not public lands which could be transferred by Congress or the officers of the government of the United States to any one else either by sale or otherwise. That this court has jurisdiction of this case, see case of Perry vs. O'Hanlon, 11 Mo. Reps. page 585 and 590, decided by this court.

2. The second reason why appellant is entitled to recover in this action, is, because the land, claimed by the appellant at the time said pre-emptions were taken by respondents, was and still is reserved from sale by acts of Congress; which being admitted by the demurrer entitles the appellant to recover, upon the decision of Perry vs. O'Hanlon, decided by this court in 11 Vol. Mo. Rep. page 585, 595, 596, 597, and the cases therein cited. See, also, the case of Stoddard et al. vs. Chambers, decided by the supreme court of the United States, 2 Howard's Rep. U. S. Sup. Ct. page 285, 313, 314, 315, 316, 317, 318.

Appellant's counsel here contend that by the act of the 9th of July, 1832, for the adjustment of land titles in the State of Missouri by Congress, it was provided, that the recorder of land titles, with two commissioners to be appointed, should examine all the unconfirmed claims to land in Missouri, which had heretofore been filed in the office of the said recorder, according to law, prior to the 10th of March, 1804. And they were required to class the claims so as to "state in the first class what claims, in their opinion, would, in fact, have been confirmed according to the laws, usages and customs of the Spanish Government, and the practice of the Spanish authorities under them. And, secondly, what claims, in their opinion were destitute of merit, either in law or equity." And by the third section it was provided, "that from and after the final report of the recorder and commissioners, the lands contained in the second class should be subject to sale as other public lands; and the lands contained in the first class continue to be reserved from sale as heretofore, until the decision of Congress shall be against the claims of them; and the lands so decided against shall be in like manner subject to sale as other public lands." See the above mentioned decision of Stoddard and others vs. Chambers, 2 Howard's Rep. 315; and acts of Congress, part first, "Laws of Pub. Lands," page 555 Chap. 439 &c. Now by this act it is made the imperious duty of the recorder and the commissioners to report upon this claim, as the notice of it was filed by law. But suppose they do not do it, by neglect or wilful obstinacy, is the appellant to suffer by it in this case? Certainly not, for this would leave it in the power of the recorder and the commissioners to defeat any claim, even the least, that could come before them. This has been the ruling of this court, that claimants are not to suffer by the acts of the officers of the government of the United States. See the case of Perry vs, O'Hanlon, 11 Mo. Rep. pages 590, 591 &c.

J. A. BEAL, for respondents, insists upon the following:

1. The plaintiff has not a legal nor equitable title.

2. The petition is multifarious, in joining the defendants together. The plaintiff cannot call upon them to adjust their respective and distinct rights in this one suit. Each defend-

ant holds in his own right, separate and distinct from the other. Separate suits ought to be brought. The lands are surveyed off, and each defendant entered his own tract according to certain numbers of the survey. It is improper to join the defendants when there is no community of interest. One defendant may rely upon one defence, and a second upon a different one. For instance, one may rely upon the plea that a part of the lines of survey are off of the tract in controversy; another may rely upon a defect of title; while a third may rely upon a purchase or agreement between the plaintiff and himself.

3. The plaintiff has no title to the lands in controversy, by his own statement, in his petition. The lands in question are not town lots, or out lots, and of course are not confirmed by the act of 1812. This court has never yet sanctioned the doctrine, that this act confirms any other lands than town lots, village and out lots. All other classes of claims are left unconfirmed, and to be acted upon. This act confirms, *propriose rigore*, town lots, &c., and its very language is different from all other acts; and parts of the same act differ. In speaking of town lots, the words are, "shall be, and *are hereby confirmed.*" When the act speaks of other kinds of land, this phraseology is omitted: Vasseur vs. Benton, 1 Mo. R., 212.

4. The proper place for the plaintiff to establish his claim was before a board of commissioners. A certain time was given in acts of 1805 and '07 to file notice of claims; otherwise he forfeited his right. This is inconsistent with a perfect grant. Bacon's abridgement, title ―. His claim was presented to a board of commissioners, and it was rejected. We may look upon the action of the board as an adjudication or an estoppel, until some lawfully constituted board, or some act of congress has given a sanction to the claim. Under the Spanish laws, a bare settlement upon lands gave no title, nor even a right to it. Some act of government was requisite to sever a part of the public domain. Thus, a concession, grant and survey were necessary. The plaintiff does not rely upon a concession or survey, but upon the most infirm of all claims.

5. The title set up by the plaintiff is the most flimsy one that can be presented. If it were pronounced valid by this court, there is scarcely a claim originating under the Spanish government that may not unsettle the long established titles of *bona fide* owners.

Plaintiff's counsel relies upon a case of Perry vs. O'Hanlon, 11 Mo. R. That was a case where Perry entered lands, and afterwards, the officers at the land office vacated the entry and refused to let Perry have a pre-emption under the act of Congress. That is unlike the present case. Here Burgess never entered the land, but the land was brought into market and entered by defendants. And further, Perry claimed under acts of Congress, different from the present one, and it originated under different circumstances. Since the origin of Perry's entry, many acts of congress have passed on the subject; so that the origin of the claims, as well as the origin of the circumstances was different, and under different laws: Stat. U. S., vol. 5, p. 126; vol. 4 U. S. Laws, 565, 661; vol. 5, p, 126.

GAMBLE, J., delivered the opinion of the court.

The petition alleges that John Jarnott, alias Gerard, in 1780, with the permission of the officers of the Spanish government, settled upon a tract of land now in Jefferson county, and continued to inhabit and cultivate it until 1796, when he was driven off by the Indians. His son Joseph succeeded him in possession of the land, and he continued to reside upon and cultivate it until he sold it to one Kendall, in the year 1812. Kendall filed a notice of his claim with the recorder of land titles, who considered and rejected it. The right of Kendall, upon his death, descended upon his heirs, and that right is vested in the plaintiff by con-

veyances filed with the petition. The plaintiff, since his purchase, has always been in possession. The claim was laid down upon the map of the public lands in the register's office, as reversed to satisfy John Jarnot's legal representatives.

In 1847 pre-emptions were allowed to different persons for different parts of the tract, and they made their separate entries, each person purchasing for himself. These purchasers are the defendants; and the plaintiff alleges that they all had notice of his claim, and of the reservation of the land from sale.

The prayer of the petition is, that the defendants be compelled to abandon their illegal claim to the land. The defendant's demurred to the petition, and assigned as causes of the demurrer, 1st. That the petition showed no right in the plaintiff to maintain his action; 2d. That separate and distinct causes of action against different persons were joined in the petition.

The demurrers were sustained by the circuit court of Jefferson county, and the plaintiff has appealed to this court.

It is to be observed, that the plaintiff shows no confirmation of his claim. The first and only assertion of it before any tribunal, was, its exhibition to the recorder of land titles by Kendall, after his purchase in 1812. The recorder refused to recommend it for confirmation, and since that time it has been utterly neglected. It is true, that the counsel now claim that it was confirmed by the second section of the act of the 3d March, 1807, 2 U. S. Statutes at large, 440; but this is an entire misapprehension of the effect of that section. The words which declare that a certain class of claims "shall be confirmed" are only a direction to the board of commissioners to confirm the claims which may be brought within the class by evidence produced before them; and by no means import a present confirmation by the direct action of congress upon the claims.

The plaintiff, then, is to be regarded as the holder of an unconfirmed claim to land which the defendants have purchased from the United States, and the question is presented by the demurrer, whether such a title will authorize him to apply to a court for the relief he seeks.

The supreme court of the United States, in Le Bois vs. Brammell, 4 Howard, 462, and in Mevard vs. Massey, 8 Howard, 307, distinctly declare, that until an inchoate title, originating under the Spanish government, has been confirmed, "it has no standing in a court of law or equity." This language was used in cases where the claimants had formal concessions from the Lieutenant Governor, and will certainly apply with as great force to a claim which rests upon a settlement made upon the domain by the permission of the Spanish officers.

The plaintiff then, has no title which authorizes him to ask the relief prayed for in his petition.   But, he alleges that the land was, by different acts of congress, reserved from sale in order to satisfy his claim, and therefore the purchases made by the defendants were void.   Suppose it to be true, that the reservation did exist, and that its effect would be to render the purchases void, still, his position in court is not changed thereby.   The reservation confers no title on him, and the nullity of purchases made by the defendants does not enhance the merits of his title.   He is still without any title that we can enforce.

In the argument, much reliance has been placed upon the case of Perry vs. O'Hanlon, 11 Mo. R. 588, as supporting the right of the plaintiff to maintain this action.

Perry owned a Spanish claim, which, under the provisions of the laws of the United States, he relinquished, and obtained thereby the right to purchase the land claimed.   He made the purchase, and afterwards the commissioner of the general land office directed the purchase to be vacated.   The land was reserved from sale on account of Perry's claim, and that claim was, by his relinquishment under the act of congress, changed into a right of pre-emption to the same land.   O'Hanlon claimed by purchase while the reservation continued.   This court decided, that notwithstanding the action of the commissioner of the general land office, Perry's title, under his purchase, was a valid subsisting title, sufficient to maintain his action of ejectment, and that the purchase under which O'Hanlon claimed, being made while such purchase was forbidden by law, was void.   The obvious distinction between that case and the present, is, that the plaintiff, Perry, was asserting a title which our laws recognize as a title under the United States, conferring a right to the immediate possession of the land, while the plaintiff, in this case has no title that can be regarded in a court of justice.

If the plaintiff should obtain a confirmation of his claim, and should then find himself obstructed by void entries or void patents, he can come into court and dispute their validity, but in his present condition, coming as a plaintiff to complain that other persons hold certificates and patents for the land to which he has now no title, he can have no relief.

The demurrers were properly sustained, and the other judges concurring, the judgment of the circuit court is affirmed.