## DENT *v.* EMMEGER.

1. Inchoate rights in the Territory of Louisiana, such as those made A.D. 1789, by a concession of the then Lieutenant Governor of Upper Louisiana to Gabriel Cerre, were of imperfect obligation on the United States when succeeding to the ownership of that Territory by the cession made of it by France to us in A.D. 1803; nor until the Congress of the United States gave them a vitality and effect which they did not before possess, were they of such a nature that a court of law or equity could recognize or enforce them. When confirmed by Congress they took their effect wholly from the act of confirmation, and not from any French or Spanish element which entered into their previous existence; so that the elder confirmee has always a better title than the younger, without reference to the date of the origin of their respective claims or the circumstances attending it.

2. *Held,* accordingly, on an application of these principles, that the title of the village of Carondelet, in Missouri, to lots 90 and 91 of the commons tract of the town, as subdivided by the survey made by Jasper Myer A.D. 1837, which lots the village claimed under a confirmation by act of Congress of 13th June, 1812, vesting the title of the United States in the inhabitants of Carondelet for all the lands lying within the outboundary line of said commons not previously granted by act of Congress—this followed by a survey in 1816 and a re-survey on the old lines in 1817, with a relinquishment of right by Congress in 1831—was a better title than that derived by Gabriel Cerre from a concession to him A.D. 1789, by the Lieutenant Governor of Upper Louisiana, a confirmation by act of Congress 1836, in which the right of all adverse claimants was saved, a survey of 1838, another act of Congress in 1869, confirming the claim of Cerre, "subject to any valid adverse rights, if any such there be," and a patent in 1869.

ERROR to the Circuit Court for the District of Missouri.

*Messrs. Glover and Shepley, for the plaintiff in error; Mr. B. A. Hill, contra.*

* Legal Tender Cases, 12 Wallace, 457.

Mr. Justice SWAYNE stated the case, and delivered the opinion of the court.

The plaintiff in error brought an action of ejectment to recover the premises described in his declaration. They consist of thirty acres of land, and are lots 90 and 91 of the commons tract of the town or village of Carondelet, as subdivided by the survey made by Jasper Myer, in 1837. The parties waived the intervention of a jury and submitted the case to the court. The court found the facts specially and adjudged that the plaintiff could not recover and that the Carondelet title, which was held to be the better one, was in the defendants. In the progress of the cause, the plaintiff offered certain evidence which was excluded by the court, and he thereupon excepted.

Two questions are presented for our consideration:

Whether the facts found are sufficient to support the judgment given; and,

Whether the court erred in excluding the evidence to which the bill of exception relates.

The examination of these questions renders it necessary to consider the title of the respective parties as disclosed in the record, as well as the testimony excluded.

The premises in controversy are within the Territory of Louisiana which belonged originally to France, was transferred by that country to Spain, and by Spain subsequently back to France, and by France to the United States by the treaty of the 30th of April, 1803. Carondelet was a village of that part of the Territory which subsequently became the State of Missouri, and contained four descriptions of real property. They were known as in-lots, out-lots, common-field lots, and commons. It is with the last only that we have to do in this case. At the period of the transfer to the United States, the claim of the village to the premises in controversy was supported by no clear and definite evidence, and the out-boundaries of the tract had not been run. On the 25th of December, 1797, Soulard, then the surveyor-general of the Territory of Louisiana, certified that at the request of the inhabitants of the village of Carondelet, Ber-

thelemy had been appointed to survey the tract granted to
them as commons by Lieutenant Governor Trudeau, and
that he had failed to perform the work by reason of his
compass being found out of order, and that want of time
had prevented the surveyor-general subsequently from hav-
ing the survey made.

This condition of things subsisted when the Territory
came into the possession of the United States under the
treaty with France of 1803, and it continued until Congress
acted upon the subject. By the act of June 13th, 1812,* it
was declared "that the rights, titles, and claims to town or
village lots, out-lots, common-field lots, and commons, in,
adjoining, and belonging to the several towns and villages,"
of which Carondelet is one, "which have been inhabited,
cultivated, or possessed prior to the 20th of December, 1803,
are hereby confirmed to the inhabitants of the respective
towns or villages aforesaid according to their several rights
in common thereto." It was provided that nothing in the
act should affect the rights of persons whose titles had been
confirmed by the board of commissioners appointed to ad-
just and settle such claims. It was made the duty of the
principal deputy surveyor of the Territory to survey, where
it had not been done, the out-boundary·lines of the villages
named, so as to include the out-lots, common-field lots, and
commons belonging to them respectively. Plats of the sur-
veys were to be forwarded to the surveyor-general, who was
required to forward copies to the Commissioner of the Gen-
eral Land Office and the Recorder of Land Titles.

The act of April 29th, 1816,† provided for the appoint-
ment of a surveyor of the public lands in the Territories of
Illinois and Missouri, and after requiring him to appoint a
sufficient number of skilful surveyors as his deputies, made
it his duty, among other things, to cause to be surveyed the
lands in those Territories, claims to which had been or might
thereafter be confirmed by Congress, which had not already
been surveyed according to law.

---

* 2 Stat. at Large, 748, § 1.          † 3 Id. 325.

Under the act of 1812, a survey of the out-boundary lines of Carondelet was made by Rector, a deputy surveyor, under instructions from the office of his principal, and the survey and field-notes were deposited in that office in the year 1817.

The act of January 27th, 1831,* declared that the United States did thereby relinquish to the inhabitants of the villages named in the act of 1812 all the title of the United States to the lots and commons "in, adjoining, and belonging to said towns and villages, to be held according to their respective rights, to be regulated and disposed of according to the laws of Missouri."

Pursuant to orders from the surveyor-general, his deputy, Brown, retraced the lines of the commons of Carondelet, as run by Rector, and re-established the corners. This resurvey was returned to the surveyor-general, and was approved by him on the 29th of July, 1834.

This statement exhibits the several links in the defendants' chain of title, so far as regards the action of the government.

That of the plaintiff in error had its inception also at a period preceding the treaty of cession of 1803. In 1789 the then Lieutenant Governor of Upper Louisiana, on the petition of Gabriel Cerre, conceded to him a tract of land of ten by forty arpents. In 1812 Cerre presented the claim for confirmation under the acts of Congress of 1805 and 1807, and it was rejected by the commissioners. It was presented by Cerre's legal representatives before the commissioners appointed under the act of Congress of July 9th, 1832, and was by them recommended for confirmation, and was confirmed accordingly by an act of Congress of the 4th of July, 1836.† The right of all adverse claimants, to assert their claims in a court of justice was saved, and it was provided that if any of the land confirmed had been located by any other person under any law of the United States, or had been surveyed and sold by the United States, the confirmation should not avail against the title thus acquired; but that

---

* 4 Stat. at Large, 435.          † 5 Id. 127.

the confirmee might, to the extent of the interference, locate his claim elsewhere in the State of Missouri or the Territory of Arkansas, as the claim might have originated on one or the other, upon any lands of the United States, subject to entry at private sale. Under this act the claim of Cerre was surveyed for the first time, and the survey was made within the limits of the commons of Carondelet as previously run by Rector in 1817, and by Brown in 1834. Before this survey the Cerre claim was totally undefined and uncertain as regards its out-boundaries.

The act of March 3d, 1869, declared that the claim of the legal representatives of Cerre was thereby confirmed " in place, subject to any valid adverse rights, if such there be," and that a patent 'should be issued accordingly. A patent bearing date the 3d of July, 1869, was accordingly issued. It was admitted in the court below that the plaintiff in error held whatever title was conveyed by this patent. The premises in controversy are within the limits of the Carondelet commons as surveyed by Rector and Brown, and embrace the premises in controversy in this suit.

The labors of our predecessors have left us little to do, and a few remarks will be sufficient to dispose of the case.

Titles which were perfect before the cession of the Territory to the United States, continued so afterwards, and were in nowise affected by the change of sovereignty.* The treaty so provided, and such would have been the effect of the principles of the law of nations if the treaty had contained no provision upon the subject. According to that code, a change of government is never permitted to affect pre-existing rights of private property. Perfect titles are as valid under the new government as they were under its predecessor.† But inchoate rights such as those of Cerre were of imperfect obligation and affected only the conscience of the new sovereign. They were not of such a nature (until that sovereign gave them a vitality and efficacy

---

* United States v. Roselius et al., 15 Howard, 36.
† Strother v. Lucas, 12 Peters, 412.

which they did not before possess) that a court of law or equity could recognize or enforce them. When confirmed by Congress they became American titles, and took their legal validity wholly from the act of confirmation and not from any French or Spanish element which entered into their previous existence. The doctrine of senior and junior equities and of relation back has no application in the jurisprudence of such cases. The elder confirmee has always a better right than the junior, without reference to the date of the origin of their respective claims or the circumstances attending it. Such is the settled course of adjudication both by this court and the Supreme Court of Missouri.*

After the passage of the act of 1812 the claim of the city was still indefinite and unenforceable until made definite and located by the survey prescribed and provided for. A survey made under the direction of the officer designated to have it made and approved by him was final and conclusive unless an appeal were taken to the Commissioner of the General Land Office.† The survey made by Rector in 1817, retraced by Brown, and approved by the surveyor-general in 1834, is binding upon the village and estops her from claiming any land beyond the lines thus established.‡ And those lines must necessarily be of equal validity as regards those claiming against her. The confirmation by the act of 1812 was exclusive except as to adverse claims which had then been confirmed. The Cerre claim was not within this category. It was confirmed subsequently, and after the lines of the commons had been defined and established by the surveys of 1817 and 1834. The action of Congress in confirming it was in every instance made subject to all prior valid conflicting rights. The title of the village asserted in this litigation was of that character.

---

* Menard's Heirs v. Massey, 8 Howard, 307; Chouteau v. Eckhart, 2 Id. 345; Les Bois v. Bramell, 4 Id. 449; Mackay v. Dillon, Ib. 430; Bird v. Montgomery, 6 Missouri, 514; Widow and Heirs of Mackay v. Dillon, 7 Id. 7; Vasquez et al. v. Ewing, 42 Id. 248.

† Menard's Heirs v. Massey, 8 Howard, 313.

‡ Carondelet v. St. Louis, 1 Black, 179.

Upon principle, authority, and the express legislation of Congress, we are constrained to hold that the adverse claim of the plaintiff in error cannot prevail against the title of the village.

The evidence excluded by the court is set out in full in the bill of exceptions, and consists of copies of documents relating to the surveys of Rector and Brown. The first of these documents bears date on the 24th of September, 1839, and the last on the 8th of October, 1855. They are communications from solicitors of the Land Office, setting forth objections to the surveys, from Commissioners of the General Land Office, the Surveyor-General of Illinois and Missouri, the Secretary of War, and the Secretary of the Interior upon the same subject; and finally a plat of the survey as retraced by Brown—with a certificate appended by the Surveyor-General—which states that the survey so traced was sanctioned by the Secretary of the Interior on the 23d of February, 1855, with a large reservation in favor of the United States at Jefferson Barracks, and subject to all other adverse claims.

As the right of the village, according to the judgment of this court in *Carondelet* v. *St. Louis*,* had been fixed by the resurvey of Brown, in 1834, which was conclusive, as regards all adverse individual claims, the testimony was clearly irrelevant and incompetent and was properly rejected. The acts of 1812 and 1836 were inapplicable to the United States and did not affect their rights.

JUDGMENT AFFIRMED.