SMITH v. MADISON *et al., Appellants.*

1. **Place of Recording Deed**: PRESUMPTION. A deed to land within the limits of the present county of Jefferson was recorded in 1808 in St. Louis district. In the absence of evidence as to the boundaries of the districts as they existed at that time, *it was held* that the court would presume that the deed was properly recorded in that district.

2. **Proof of Ancient Recorded Deeds**: STATUTES IN FORCE. Sections 35 and 36 of the chapter on evidence, (Wag. Stat., page 595,) permitting a certified copy of a deed recorded thirty years before the first day of January, 1867, to be read in evidence without proof of the execution of the original, whether it was properly acknowledged or not, have not been repealed by the act of March 28th, 1874. (Acts 1874, page 59.)

3. **Spanish Land Titles**: TRANSFER TO THE UNITED STATES. An order of survey made by the Spanish Lieutenant-Governor in the year 1799, and a survey made in the same year in pursuance of the order, together with inhabitation and cultivation of the premises by the grantee and his family, did not vest in him a complete title. In order to pass this out of the Crown of Spain, certain formalities prescribed by the Intendant-General, under the authority of the royal order of October 22nd, 1798, had to be complied with. Where this had not been done, the title of the grantee remained inchoate, and the legal title passed, upon the acquisition of Louisiana, to the United States.

4. **The Statute of Limitations** does not begin to run in favor of one in the possession of land until the legal title has emanated from the Government. *Gibson v. Chouteau*, 13 Wall. 92, &c.

*Appeal from Jefferson Circuit Court.*—Hon. JOHN B. ROB-INSON, Judge.

*Joseph J. Williams* for appellants.

*John L. Thomas & Bro.* for respondent.

HOUGH, J.—This was an action of ejectment brought on the 21st day of April, 1874, in the circuit court of Jefferson county, for the recovery of 282 65-100 acres of land, being a part of United States survey No. 1219. The defendants denied the plaintiffs' title, and pleaded the statute of limitations in the ordinary form as a legal bar. The cause was tried by the court without the aid of a jury, and judgment was rendered for the plaintiffs. The plaintiffs' title was as follows: A patent from the United States, dated April 13th, 1874, to Thomas F. Riddick, or his legal representatives, for the land in controversy. This patent recites that the board of commissioners appointed and acting under the act of Congress, approved March 2d,

1805, entitled " An act for ascertaining and adjusting the titles and claims to land within the territory of Orleans and the district of Louisiana," and supplemental legislation, have confirmed to Thomas F. Riddick, claiming under John Dowling, original claimant, a tract of land containing 800 arpents, situate in the district of St. Louis, and that for said claim the said board of commissioners have issued their certificate of confirmation, numbered 1219, dated the 22d day of August, 1811, under the authority of the 6th section of the act of Congress, approved the 3d day of March, 1807, entitled " An act respecting claims to land in the territories of Orleans and Louisiana," and also that the land was surveyed by the Surveyor-General of the United States in 1818, and that the same was confirmed as survey No. 1219.

Plaintiffs also read in evidence a copy of the claim of Thomas F. Riddick, filed with the recorder of land titles at St. Louis in 1807, accompanied by a sheriff's deed, conveying all the right of John Dowling in the premises to said Riddick, together with the proof produced by said Riddick before the board at that time. This claim and record showed that Dowling claimed 1,000 arpents on the river Plattin, in the district of St. Louis, and that said Riddick produced before said board a concession for said land to John Dowling by Don Zenon Trudeau, Lieutenant-Governor of Upper Louisiana, in 1799, and also a plat and certificate of survey of the same dated October 21st, 1799. The proof showed that Dowling settled on this land in 1799, and had cultivated and inhabitated it from 1799 to 1808; had forty acres in cultivation ; had many horses and cattle, and at least ten children. Plaintiffs also read in evidence the decision of the commissioners in 1811, confirming the said land to Thomas F. Riddick, under John Dowling, and ordering the land to be surveyed at the expense of the Government.

Plaintiffs then read in evidence a certified copy of a warranty deed from Thomas F. Riddick and wife to Wm.

C. Carr, dated November 23d, 1808, and recorded the same day, for the undivided half of survey 1219, which copy was certified by the recorder of St. Louis county as being a true copy of a deed from the land records of the county. The defendants objected to the reading of this deed in evidence because the land being now in Jefferson county, the burden of proof was on plaintiffs to show that the land lay in St. Louis district in 1808, when it was recorded there, and until that was shown it ought not to be read. They also objected to the reading of this copy because it was acknowledged before a justice of the peace in St. Louis district, and it does not appear that the land lay in that district at that time. They also objected to its being read in evidence because a copy could not be read until proof of the execution of the original was made. Plaintiffs next read in evidence a copy of a deed from Thomas F. Riddick to George C. Sibley, for one-half of said land, dated August 31st, 1814, and appearing to have been recorded in Ste. Genevieve county, Missouri, November 14th, 1814. The recorder of Ste. Genevieve county certified the aforesaid copy of the deed in 1874. To the reading of this copy defendants objected because it had not been shown that the land lay in Ste. Genevieve county in 1814, and because it appeared to have been acknowledged before W. Christy, a judge of the St. Louis court of common pleas, and it did not appear that the land lay in the district in which he had jurisdiction. Plaintiffs then read in evidence a certified copy of a deed, dated August 10th, 1814, and recorded in Ste. Genevieve county November, 1814, conveying one-half of this land from Wm. C. Carr to George C. Sibley. This copy was made by the recorder of Ste. Genevieve county in 1874, to the reading of which in evidence defendants objected for the reasons last above mentioned. Plaintiffs then read in evidence a deed from George C. Sibley and wife to Robert Simpson, dated August 21st, 1821, and recorded in Jefferson county in 1824, conveying this land to Robert Simpson. To the reading of this deed

defendants objected, 1st, because it appeared to be acknowledged before a justice of the peace of Lillard county, while the land lay in Jefferson county, and hence the deed could not be read in evidence until its due execution was proved; 2d, it not being duly acknowledged, was not entitled to be recorded, and could not be read in evidence without proof of its execution. The defendants here admitted that plaintiffs were the only heirs of Robert Simpson, who died in 1873. It was also admitted that the value of the monthly rent and profits of the premises in suit was $4.50.

Defendants then introduced the following evidence: The petition of John Dowling to Francois Valle, commandant of the post of St. Genevieve, for a concession of 1,000 arpents of land on the north side of the river Plattin, about two miles above its mouth, on which he lived and had his farm and dwelling, dated August 12, 1799; also the written submission of said petition by Valle to the Lieutenant-Governor on the 13th of August, 1799; also an order of survey for the land petitioned for by Don Zenon Trudeau, Lieutenant-Governor, indorsed thereon, which order is as follows:

" It is ordered that Antoine Soulard establish a survey upon the land which is asked, provided it is vacant land and can be so done without prejudice to any person, and interferes with no rights of others, in pursuance of the petition presented, which is asked from the Lieutenant-Governor of this province, so as to obtain the concession of title which is solicited.

(Signed,)                              " ZENON TRUDEAU."

Also a survey and plat of the tract of land made by Antoine Soulard for John Dowling, by order of the Lieutenant-Governor, for 1,000 arpents, including all the present survey 1219, dated November 5th, 1799; also a copy of the certificate of the commissioners as recorded, dated August 22d, 1811, confirming a portion of said land to Riddick, under Dowling, which certificate is as follows:

"Louisiana commissioners' certificate, No. 1219, August 22d, 1811.

"We, the undersigned commissioners for ascertaining and adjusting the titles and claims to lands in the territory of Louisiana, have decided that Thomas F. Riddick, claiming under John Dowling, original claimant, is entitled to a patent under the provisions of the 2d section of an act of the Congress of the United States, entitled "An act for ascertaining and adjusting the titles and claims to land within the territory of Orleans and the district of Louisiana," passed the 2d day of March, 1805, for 800 arpents of land, situate in the district of St. Louis on river Plattin, and order that the same be surveyed as nearly in a square as may be, and so as to include his improvements. By virtue of a permission from the proper Spanish officer, and also of actual inhabitation and cultivation prior to and on the 20th day of December, 1803.

(Signed,)					"CLEMENT B. PENROSE,
(Signed,)					"FREDERICK BATES."

Also the survey by the Surveyor-General of the United States for Riddick ; also the sheriff's deed to Riddick made by Conner, and his notice of claim to the recorder of land titles, and the minutes of the board of September 7th, 1808, and the decision of the commissioners on August 22d, 1811, (same as offered by plaintiffs;) also a deed by the administrator of Thomas F. Riddick, by order of county court of Jefferson county, in which county Riddick died in the year 1830, purporting to convey to William S. Howe all of United States survey No. 1219, sold as the property of the estate of Riddick to pay debts of the estate, deed bearing date June 22d, 1854. This deed was objected to for various reasons, but the court allowed it to be read as a color of title in support of the plea of the statute of limitations. Plaintiffs admitted that William S. Howe took possession of survey 1219 in the year 1855, built a house and cleared a field on it in that year, and paid taxes thereon, and held it adversely till his death in 1870,

when it was partitioned among his heirs; the part sued for in this action being assigned the wife of defendant, Madison, who is his daughter, who has held it adversely ever since, (defendant Sack being a tenant.)

The copy of the deed from Riddick to Carr was properly admitted in evidence. This deed having been recorded 1. PLACE OF RE-CORDING DEED: presumption. in St. Louis district in 1808, and no evidence of the boundaries of the districts as they existed at that time having been adduced, we must presume that the deed was properly recorded in that district. Such was the ruling of this court in *Miller v. Dunn*, 62 Mo. 225, with reference to a deed recorded in New Madrid district in 1808.

This deed having been recorded more than thirty years before the first day of January, 1867, under sections 2. PROOF OF AN-CIENT RECORDED DEEDS: statutes in force. 35 and 36 of the statute in relation to evidence, a certified copy thereof was admissible without proof of the execution of the original, whether the same was properly acknowledged or not. 1 Wag. Stat., secs. 35 and 36, p. 595. The 1st and 2d sections of the act of March 28, 1874, declaring deeds which have been executed and acknowledged according to law, and which have been recorded thirty years prior to passage of that act, admissible in evidence without further proof of the execution thereof, and making copies of the same admissible upon proof of the loss of the original, have no application to the objections made by the defendants. The object of this enactment is not readily perceived, but, whatever may have been the purpose of the draughtsman, we are of opinion that it does not, as contended by the defendants, repeal the 35th and 36th sections of the chapter on evidence. It follows, from the foregoing observations, that the deed from Riddick to Sibley and from Carr to Sibley and from Sibley to Simpson, all of which were recorded more than thirty years before the first day of January, 1867, were properly admitted.

This brings us to a consideration of the defendants'

plea of the statute of limitations, which presents the most important question in the case. The plaintiff contends that the legal title to the premises sued for remained in the United States until the issuing of the patent therefor on the 13th of April, 1874, and that the statute of limitations did not begin to run in favor of an adverse occupant of said premises until the legal title so emanated from the United States. The defendants contend that the concession or order of survey from the Spanish Lieutenant-Governor to Dowling in 1799, and the survey made by Soulard in pursuance thereof in the same year, and the fact that he inhabited and cultivated the land from 1799 to 1808, invested Dowling with the title, and prevented the fee from vesting in the United States under the treaty of cession concluded at Paris on the 30th day of April, 1803, and that the decision of the commissioners in 1811, in connection with the survey made by the United States surveyor in 1818, conclusively determined the title to be in Riddick as against the United States, and that the statute of limitations would, therefore, run in favor of an adverse occupant, although no patent was issued by the United States until within ten years of the institution of this suit.

*3. SPANISH LAND TITLES: transfer to the United States.*

That the Lieutenant-Governor of Upper Louisiana had authority to make concessions, direct surveys to be made and cause grantees to be put in possession, is conceded by all the authorities, but it is expressly declared by the Supreme Court of the United States, in *Menard v. Massey,* 8 How. 293, that such acts on the part of the Lieutenant-Governor did not invest his grantees with a complete title. The recent decision of this court in *Harvey v. Rusch, ante* p. 551, is to the same effect. On the 17th day of July, 1799, the Intendant-General, Morales, acting under the royal order of the 22d day of October, 1798, making the Intendants of New Spain the peculiar judges of all questions relating to the royal lands, and investing them with exclusive authority to grant lands belonging to the Crown,

published certain regulations having the force of written law during the continuance of Spanish rule, designating the steps necessary to be taken in order to acquire the title to real property in the provinces of Upper and Lower Louisiana, and referring therein to cessions or orders made by the Lieutenant-Governor, declared in the 18th article thereof "that no one of those who have obtained said decrees, notwithstanding in virtue of them the survey has taken place and that they have been put in possession, can be regarded as owners of the land until their real titles are delivered, completed with all the formalities before recited." *Menard's Heirs v. Massey*, 8 How. 293.

In the case just cited these formalities are set forth as follows: The surveyor was bound to forward to the Intendant a survey, and also a copy of the survey, or rather figurative plat and a certificate called a *proces-verbal*, signed by the commandant or a syndic and two neighbors, together with the surveyor, declaring that the survey was made in their presence and corresponded with the facts stated in the *proces-verbal;* and on the concession, this figurative plat and the *proces-verbal* the complete title was founded, a copy of the plat and *proces-verbal* being attached and the whole recorded in several departments. Unless these formalities were observed, the title remained in the Crown. It is not pretended that they were observed in the present case, and the legal title to the land in controversy, therefore, remained in the Spanish Government, and the United States succeeded thereto under the treaty of cession before mentioned.

Soon after the acquisition of Louisiana the Government of the United Stated devised methods of its own for the completion of the title in those holding inchoate or equitable titles under the Spanish and French Governments. The acts of March 2d, 1805, and March 3d, 1807, were passed, providing for the appointment of commissioners, for the purpose of ascertaining the rights of persons claiming lands in the territories of Orleans and Louisiana, with

full power to decide, according to the laws and established usages and customs of the French and Spanish Governments, upon all claims to lands within their respective districts, and their decision, when in favor of the claimant, was declared to be final against the United States. The 6th section of the act of 1807 required the commissioners to transmit to the Secretary of the Treasury and to the Surveyor-General transcripts of the final decision made in favor of the claimant, and to deliver to the party a certificate, stating the circumstances of the case, and that he is entitled to a patent for the tract of land therein designated. This certificate was required to be filed with the proper register or recorder within twelve months after date, and thereupon the register or recorder issued a certificate in favor of the party, which certificate, being transmitted to the Secretary of the Treasury, entitled the party to a patent to be issued in like manner as provided by law for the issuing of patents for public lands lying in other territories in the United States. By the act of 1805 claimants were required to present their claims by the 1st day of March, 1806, but the act of 1807 extended the time until July, 1808. Riddick, claiming under Dowling, presented the claim in question to the board of commissioners on the 7th day of September, 1807. Riddick, however, did not acquire the legal title to the land embraced in the concession or order of survey made by Trudeau simply by the passage of these acts. It has been repeatedly decided by the Supreme Court of the United States, as well as by this court, that these statutes of 1805 and 1807 did not, *proprio vigore*, vest the legal title to which the United Stated succeeded under the treaty with France in the claimants under the Spanish and French authorities. A decision by the board of commissioners, under the provisions of these acts, in favor of the claimant vested in their confirmee an equitable title only to the land designated by them, and entitled such confirmee to a patent investing him with the legal title. *Burgess v. Gray,* 15 Mo. 220; *Aubuchon v. Ames,*

27 Mo. 93; *LeBeau v. Armitage*, 47 Mo. 138; *Landes v. Brant*, 10 How. 374; *Burgess v. Gray*, 16 How. 48; *McGuire v. Tyler*, 8 Wall. 657.

The recent case of *Langdeau v. Hanes*, 21 Wall. 521, has been cited by defendants' counsel as being in conflict with the foregoing authorities. A slight examination into the character of the confirmation which was under discussion in that case will plainly show that there is no conflict whatever between that case and the cases cited. The act of March 3d, 1807, there considered, was "An act confirming claims to land in the district of Vincennes, and for other purposes." In the cession by Virginia of the Northwest territory she expressly stipulated for the confirmation of the possessions and titles of its inhabitants held under concessions from French and English authorities. "It was for confirmation," said the court in *Langdeau v. Hanes*, "of existing possessions and titles that the deed of cession stipulated; not the transfer of any new title. Virginia had not repudiated the concessions by the French and English authorities to the inhabitants in the territory who had declared themselves her citizens, but had recognized and sustained them. There was, therefore, no title in her in the lands covered by the possessions of these people to transfer, and she did not undertake to transfer any." On March 26th, 1804, Congress passed an act for the purpose of ascertaining the claimants of such titles, and appointed commissioners to examine and decide upon the claims presented. A transcript of their decisions made in favor of claimants and a report of the claims rejected, with the substance of the evidence adduced in their support, were required to be transmitted to the Secretary of the Treasury, and by him to be laid before Congress. Such transcript was made and transmitted to Congress, and by the act of March 3d, 1807, last cited, all decisions in favor of persons claiming lands in the district of Vincennes, contained in said transcript, were confirmed. It will thus be seen that the court in that case held that no title ever vested in the

United States as to the lands claimed; as a necessary consequence, they further held that the confirmation was a simple fulfillment of the condition of the deed of cession, and amounted merely to an authoritative recognition by record of such titles, and the fact that patents were provided for in the act took nothing from the force of the confirmation. There is a wide difference between that case and the present. In the case at bar the legal title vested in the United States under the treaty with France. The claims covered by the acts of 1805 and 1807 were not reported to Congress prior to the passage of those acts, and those acts were not intended as a present confirmation by the direct action of Congress upon the claims, but as a direction only to the board of commissioners to confirm such claims as might, by the evidence produced before them, be brought within the classes designated by the acts. The board of commissioners had no authority to grant the fee held by the United States, but the officers of the Government were required to issue patents to such persons as the board should declare, after investigation, to be entitled to them. Another important fact in the present case is that the confirmation by the board of commissioners was of a part only of the claim of Dowling as presented by Riddick, and an order of survey was made by the commissioners in order to ascertain the boundaries of the land confirmed, and this fact brings this case directly within the rule laid down in *West v. Cochran*, 17 How. 403.

We are of opinion, therefore, that the legal title to the land in controversy remained in the United States

4. THE STATUTE OF LIMITATIONS. until the patent was issued on the 13th day of April, 1872, and the plaintiffs were not barred, even though they might have maintained ejectment under the statutes of this State before the patent issued. *Gibson v. Chouteau*, 13 Wall. 92; *McIlhinney v. Ficke*, 61 Mo. 329; *Miller v. Dunn*, 62 Mo. 216. It may be further observed in this connection that from 1855, when the defendants' ancestors went into possession, until 1872, eject-

45

ment could not be maintained on a confirmation under the laws of the United States. Rev. Stat. 1855, title Eject-ment, Acts 1872, p. 66; *LeBeau v. Armitage*, 47 Mo. 138.

All the judges concurring, the judgment of the circuit court will be affirmed.

AFFIRMED.