[No. 465.   January 6, 1892.]

## HENRY GRANT, PLAINTIFF IN ERROR, v. PEDRO Y. JARAMILLO, DEFENDANT IN ERROR.

PUBLIC LANDS—PATENT—SPANISH GRANT—EJECTMENT—LIMITATION—
PRESCRIPTION.—In an action of ejectment for the recovery of land in
New Mexico, claimed under a patent from the United States, held by
defendant under claim of grant to his grantors from the king of Spain,
while New Mexico was a province of Spain, and by virtue of an
actual uninterrupted possession and cultivation of the land by him
and his grantors continuously since 1825, and that if there never was
such a grant, then his grantors had title by prescription, by long con-
tinued possession and cultivation under the Spanish and Mexican
laws, recognized by the treaty of cession, where the defendant offered
no title papers in support of his claim,—Held: If the defendant had
any rights growing out of the claims set up by him to the land in con-
troversy, they were of an inchoate nature, and, as has been held by
the supreme court of the United States, such as have been reserved
by congress to be determined by the political department of the
government, or by such tribunal as may, by act of congress, be
authorized to determine them; and this court has not been vested
with such authority.

ERROR, from a judgment for plaintiff, to the First
Judicial District Court, Santa Fe County.   Judgment
affirmed.

The facts are stated in the opinion of the court.

N. B. LAUGHLIN and C. H. GILDERSLEEVE for
plaintiff in error.

F. W. CLANCY for defendant in error.

LEE, J.—This is an action in ejectment by defend-
ant in error brought in the district court for Rio Arriba
county, and on change of venue tried in Santa Fe
county, for the possession of a tract of land described
in the declaration.   To the declaration the defendant
below, plaintiff in error here, pleads not guilty, the

statute of limitations, and notice as required under section 2270, Compiled Laws, 1884. Issue was joined and trial had at the February, 1890, term, and verdict for the defendant in the court below, and the verdict was set aside by the court, and new trial granted, and tried again at February, 1891, term, at which trial the court directed a verdict, as to the possession, for the plaintiff, and the jury returned a verdict for the plaintiff as to the improvements, and the case is here on a writ of error from the judgment of the court below on that verdict. The defendant in error claims title to the land under a United States patent issued to him on an entry made under the public land laws of the United States by him in the year 1883. The plaintiff in error claims that the title to the land in question is in him, because—First, the land is a part of a grant of land made by the king of Spain in the early part of this century to one Joaquin Garcia, at and comprising the town of El Rito, in Rio Arriba county; second, by virtue of the original deeds and mesne conveyances from his grantors running back to the year 1825; third, by virtue of actual and uninterrupted possession and cultivation of the land by him and his grantors continuously since the year 1825 to the commencement of this suit; fourth, that if the grant was made to Joaquin Garcia, but has since been lost or destroyed, then his grantors had a title under the Mexican government, such as should be recognized by the laws of this country under the treaty of Guadalupe Hidalgo, and the land was reserved from sale and the patent was issued without authority of law, and is void; fifth, that, if there never was a grant made to Joaquin Garcia by the kingdom of Spain or Mexico, his grantors, by virtue of their occupation and cultivation, had title under decrees of Mexico made to them confirming the lands to occupiers and cultivators of the crown lands or public domain; sixth, his grantors had

title by prescription, by long-continued possession, and cultivation under the Spanish and Mexican laws, such as should be recognized under the stipulations in the treaty of Guadalupe Hidalgo.

In this case it is claimed by the plaintiff in error that the title to the land in question is in him, because SPANISH it is a part of a grant of land made by the grant: eject-ment: limitation: king of Spain in the early part of the prescription. present century to one Joaquin Garcia; and that by transfers, either in writing or verbal, the title passed down from said grantee to the defendant in the suit below; and that, if there never was a grant made to Joaquin Garcia, the said defendant holds the same by prescriptive rights under the Spanish and Mexican laws, such as should be recognized under the stipulation in the treaty of Guadalupe Hidalgo. Counsel for appellant cite a number of authorities to the effect that under the laws of Mexico transfers of real estate could be made by verbal contract. This proposition has never been controverted by this court. The statute of frauds was unknown to the civil laws which were in force in Mexico at the time of the acquisition of the territory, and real estate could be sold and delivered in the same manner as personal property. In the case of Salazar v. Longwill, 5 N. M. 548, there was no pretension of the delivery of the property under the sale. Whatever rights the grantees derived in that case were from the pretended deeds offered in evidence, and it is very clear they purported to be transfers before a notary public by what would be termed a "public writing" (escritura publica), and governed by the laws as referred to in that case. The rulings, however, in that case have no application to the one now under consideration. In this case the plaintiff in the court below brings his suit in ejectment, claiming title to and the right of possession of the property in question by virtue of a patent of the United

States issued to him by homestead entry under the general land laws; the plaintiff in error claiming that the patent was void, for the reason that the land was not subject to entry from the United States, because it was embraced in a grant from the king of Spain to one Joaquin Garcia while this territory was a part of a province of that kingdom. There were no title papers offered in evidence showing the existence of such a grant, but the court was asked to presume such a grant from the occupation of the land since the year A. D. 1825; or, if such presumption could not be exercised, that the court should hold that the plaintiff in error was entitled to the land by virtue of the prescriptive laws of Mexico, which, it is claimed, should be recognized by the court as a part of the law of this country, under the stipulation of the treaty of Guadalupe Hidalgo. The proposition of the plaintiff in error thus taken is clearly set forth in an instruction which he asked the court to give to the jury, to the refusal of which he excepted, thus bringing the question directly to be passed upon by this court.

The instruction is as follows: "If the jury shall find from the evidence that about the year 1825, and prior to the time when the country comprising the territory of New Mexico was ceded by the republic of Mexico to the United States, the land in controversy in this action was held, possessed, and occupied under a claim of ownership by any person or persons, and such lands were by such person or persons improved or cultivated under such claim, and such possession and claim were public, open, and notorious, and this condition continued until the cession of this territory to the United States in 1848, you will be justified from this state of facts, if found by you to exist, in presuming that the person or persons so holding, possessing, occupying, improving, and cultivating such lands, prior to such cession held a grant or cession of such

lands from the governments of Spain and Mexico; and
if you find that there was such a grant or cession, and
if you further find from the evidence that the defend-
ant in this cause, prior to the commencement of this
action, acquired all the right, claim, title, and interest
in the parcel of land in controversy that was had, held,
and possessed by the person or persons owning the
same at the time of the cession of this territory to the
United States, then your verdict should be for the de-
fendant.''

The questions involved in this case have been
fully investigated by the supreme court of the United
States in numerous cases, and there is nothing left for
us to do but to apply their rulings to the questions
involved.    In the case of Dent v. Emmeger, 14 Wall.
308, in regard to the claim of Gabriel Cerre by a con-
cession made A. D. 1789 by the then lieutenant gov-
ernor of Upper Louisiana, the court says: ''Titles
which were perfect before the cession of the territory
to the United States continued so afterward, and were
in nowise affected by the change of sovereignty.    The
treaty so provided, and such would have been the
effect of the principles of the law of nations if the
treaty had contained no provision upon the subject.
According to that code, a change of government is
never permitted to affect preexisting rights of private
property.    Perfect titles are as valid under the new
government as they were under its predecessor.    But
inchoate rights, such as those of Cerre, were of imper-
fect obligation, and affected only the conscience of the
new sovereign.    They were not of such a nature (until
that sovereign gave them a vitality and efficacy which
they did not before possess) that a court of law or
equity could recognize or enforce them.    When con-
firmed by congress, they became American titles, and
took their legal validity wholly from the act of con-
firmation, and not from any French or Spanish ele-

ment which entered into their previous existence. The doctrine of senior and junior equities and of relation back has no application in the jurisprudence of such cases. The elder confirmee has always a better right than the junior, without reference to the date of the origin of their respective claims, or the circumstances attending it."

In order to more clearly understand the meaning of the word "inchoate," as used in the above opinion, it may be well to refer to the opinion in the case of Burgess v. Gray et al., 16 How. 48. That case involved the same question raised in this case. John Jarrott in 1780, by permission of the officers of the Spanish government, settled on a tract of land in what is now Jefferson county, in the state of Missouri. That he, his heirs and assigns, continued to occupy and cultivate it until the year 1847, when the land was entered at the register's office by different persons under preemption allowed to them by the officers of the land office. Suit was brought in the circuit court of Jefferson county, Missouri, in which the plaintiff, by petition, set forth the claim and occupation of the said Jarrott and his heirs, with deeds of conveyance from the same in succession to the plaintiff; the defendants being the holders of the aforesaid entry titles from the government. The defendants demurred to the petition, which demurrer was sustained, and, on appeal from the judgment, was affirmed by the supreme court of that state (15 Mo. 220) and the plaintiff below appealed to the supreme court of the United States. Under the code, in Missouri, all claims, either in law or equity, set forth in the petition, could be determined in the action; and the federal supreme court, in passing on the question, said: "The demurrer admits the truth of the facts stated in the petition; and consequently, if these facts show that he had any legal or equitable right to the land in question under the treaty with

France, or an act of congress, which the state court was authorized and bound to protect and enforce, he is entitled to maintain this writ of error, and the judgment of the state court must be reversed. Now, as regards any equitable and inchoate title which the petitioner may possess under the treaty with France, it is quite clear that the state court had no jurisdiction over it; for it has been repeatedly held by this court that, under that treaty, no inchoate and imperfect title derived from the French or Spanish authorities can be maintained in a court of justice, unless jurisdiction to try and decide it has first been conferred by an act of congress. * * * The court had no jurisdiction upon the question; and the judgment of the state court can not be reversed unless the plaintiff can show that he had a complete and perfect title derived from the Spanish or French authorities, or a legal or equitable title under the laws of the United States. * * * Neither can the petition be maintained upon the long and continued possession held by the petitioner, and those under whom he claims. The legal title to this land, under the treaty with France, was in the United States. The defendants are in possession, claiming title from the United States, and with evidence of title derived from the proper officers of the government. It is not necessary to inquire whether the title claimed by them is valid or not. The petitioner, as appears by the case he presents in his petition, has no title of any description, derived from the constituted authorities of the United States, of which any court of justice can take cognizance; and the mere possession of public lands, without title, will not enable the party to maintain a suit against anyone who enters on it; and more especially he can not maintain it against persons holding possession under the title derived from the proper officers of the government. He must first show a right in himself before he can call into question the validity

of theirs. Whatever equity, therefore, the plaintiff
may be supposed to have, it is for the consideration
and decision of congress, and not for the courts.    If
he has suffered injury from the mistake or omission of
the public officer, or from his own ignorance of the
law, the power to repair it rests with the political
department of the government, and not the judicial.
It is expressly reserved to the former by the act of
congress.'' Certainly no such jurisdiction has been
given to the district courts of this territory, especially
in view of the fact that congress has made very ample
provisions by creating a court with the exclusive juris-
diction to try and determine the validity of such claims.
But, even in cases where the court has the jurisdiction,
claims like that set up by the plaintiff in error could
not be maintained against a person holding a patent
from the United States in a proceeding of ejectment.

In Steel v. Smelting Co., 106 U. S. 447, the court
says: ''Until set aside or enjoined, it must, of course,
stand against a collateral attack with the efficacy
attending judgments founded upon unimpeachable evi-
dence.   So with a patent for land of the United States,
which is the result of the judgment upon the right of
the patentee by that department of the government to
which the alienation of the public lands is confided,
the remedy of the aggrieved party must be sought by
him in a court of equity, if he possess such an equita-
ble right to the premises as would give him the title if
the patent was out of the way.  If he occupy with
respect to the land no such position as this, he can
only apply to the officers of the government to take
measures in its name to vacate the patent or limit its
operation.   It can not be vacated or limited in its pro-
ceedings where it comes collaterally in question.    It
can not be vacated or limited by the officers them-
selves; their power over the land is ended with the pat-
ent issued and placed on the records of the department.

This can be accomplished by regular judicial proceedings, taken in the name of the government for that special purpose. It does not follow that the officers of the government would take such proceedings even if the charges of fraud and the use of false testimony in obtaining the patent were true. They might be satisfied that the patentee was entitled to the patent upon other testimony, or that further proceedings would result in a similar conclusion, and that, therefore, it would be unwise to reopen the matter. In any event, whether the officers of the government have been misled by the testimony produced before them or not, the conclusions reached by them are not to be submitted for consideration to every jury before which the patent may be offered in evidence on the trial of an action. As we said in the case of Smelting Co. v. Kemp, "it is this unassailable character (of the patent) which gives to it its chief, indeed its only, value, as a means of quieting its possessor in the enjoyment of the lands it embraces. If intruders upon them could compel him, in every suit for possession, to establish the validity of the action of the land department, and the correctness of its ruling upon matters submitted to it, instead of being a means of peace and security, would subject his rights to constant and ruinous litigation. He would recover one portion of his land if the jury were satisfied that the evidence produced justified the action of that department, and lose another portion, the title whereto rests upon the same facts, because another jury came to a different conclusion. So his rights in different suits upon the same patent would be determined, not by its efficacy as a conveyance of the government, but according to the fluctuating prejudices of different jurymen, or their varying capacities to weigh evidence."

In regard to the contention that the sale of the land and issuance of the patent were in violation of the

treaty of Guadalupe Hidalgo, to a like question in the case of Botiller v. Dominguez, 130 U. S. 247, the supreme court says: "Two propositions under this statute are presented by counsel in support of the decision of the supreme court of California. The first of these is that the statute itself is invalid, as being in conflict with the provisions of the treaty with Mexico, and violating the protection which was guaranteed by it to the property of Mexican citizens owned by them at the date of the treaty; and also in conflict with the rights of property under the constitution and laws of the United States, so far as it may affect titles perfected under Mexico. The second proposition is that the statute was not intended to apply to claims which were supported by a complete and perfect title from the Mexican government, but, on the contrary, only to such as were imperfect, inchoate, and equitable in their character, without being a strict legal title. With regard to the first of these propositions, it may be said that, so far as the act of congress is in conflict with the treaty with Mexico, that is a matter in which the court is bound to follow the statutory enactments of its own government. If the treaty was violated by this general statute enacted for the purpose of ascertaining the validity of claims derived from the Mexican government, it was a matter of international concern, which the two states must determine by treaty, or by such other means as enables one state to enforce upon another the obligations of a treaty. This court, in a class of cases like the present, has no power to set itself up as the instrumentality for enforcing the provisions of a treaty with a foreign nation which the government of the United States, as a sovereign power, chooses to disregard."

The proposition that the grantors of the plaintiffs in error derived their title from the decree of the Spanish courts relative to crown lands passed in 1813 is

equally untenable, under the rulings of the supreme court in the case of U. S. v. Vallejo, 1 Black, 541. It is held that the decree of the Spanish cortes, being inapplicable to the state of things which existed in Mexico after the revolution of 1820, could not have continued in force unless expressly recognized by the Mexican congress, and not then without being essentially modified. The Spanish system of disposing of public lands was very different from that provided for by the Mexican law of 1828. The two laws being repugnant and inconsistent, the former was repealed. The laws of 1824 and the regulations of 1828 are the only laws of Mexico on the subject of granting public lands in the territories, except those regulating towns and missions. It is evident that, if the plaintiff in error has any rights to the land in question growing out of the Spanish and Mexican claims set up by him, they are of an inchoate character, and, according to the decisions of the supreme court above referred to, are such as are reserved by congress to be determined by the political department of the government, or by such tribunal as may be, by an act of congress, authorized to try and determine them; and it is equally clear that this court has not been clothed with such authority. The rulings of the court below, which are assigned as error, being in accord with the decisions of the supreme court of the United States upon the question involved, the judgment below will be affirmed.

O'BRIEN, C. J., and FREEMAN and McFIE, JJ., concur.