# JONES, RECEIVER, *v.* ST. LOUIS LAND AND CATTLE CO.

## ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 203.   Argued January 27, 1914.—Decided February 24, 1914.

The act of June 21, 1860, expressly reserved the adverse rights of parties to the Mexican and Spanish grants confirmed thereby and provided that the confirmations should only be considered as quitclaims and relinquishments on the part of the United States.

The act of June 21, 1860, confirming Mexican and Spanish grants, was intended to be a discharge of the obligations of our treaty with Mexico and a confirmation of existing rights as they existed; it was not a gratuity like the railroad land grant acts, nor are overlapping rights in grants confirmed thereby to be shared equally as overlapping railroad grants are shared. *Southern Pacific R. R. Co.* v. *United States*, 183 U. S. 519, distinguished.

Where two grants confirmed by the act of June 21, 1860, overlapped, the rights of the owner of each as against the other were reserved by the act, and the judicial inquiry extends to the character of the original concessions, and the court must determine which gave the better right to the disputed premises.

In this case *held*, that of two overlapping Mexican grants both confirmed by the act of June 21, 1860, the earlier grant was in all of its steps prior to the other grant and included all of the overlap.

A survey was necessary to the accurate segregation and delimitation of a Mexican grant confirmed by the act of 1860. *Stoneroad* v. *Stoneroad*, 158 U. S. 240.

THE facts, which involve the title of the parties to certain Mexican land grants, are stated in the opinion.

*Mr. Andrieus A. Jones* for appellant:

The Jefe Politico was never authorized to grant lands.
The Spanish system was abrogated by Independence.

The Plan of Iguala did not continue Spanish system.

The Spanish system was abolished by law of .1823.

There is no presumption in favor of the Beck grant.

The survey of the Beck grant gives no preference.

The confirmation of the Beck grant does not relate back to the date of the application to Surveyor General.

In support of these contentions appellant cites: *Banks* v. *Moreno*, 39 California, 233; *Barry* v. *Gamble*, 3 How. 32; *Beard* v. *Federy*, 3 Wall. 479; *Berthold* v. *McDonald*, 24 Missouri, 126; *Berthold* v. *McDonald,* 22 How. 334; *Bissell* v. *Henshaw*, 1 Sawyer, 553; *Butler and Bakers Case*, 2 Coke, 29; *Carpentier* v. *Montgomery*, 13 Wall. 480; *Cessna* v. *United States*, 169 U. S. 165; *Chicago &c. R. R.* v. *United States*, 159 U. S. 372; *Chouteau* v. *Eckert*, 2 How. 345; *In re Cooper*, 143 U. S. 503; *Dent* v. *Emmeger*, 14 Wall. 308; *Doe* v. *Eslava*, 9 How. 421; *Ely* v. *United States*, 171 U. S. 220; *Evans* v. *Durango Land Co.*, 85 Fed. Rep. 433; *Gibson* v. *Chouteau*, 13 Wall. 101; *Good* v. *McQueen*, 3 Texas, 241; *Hale* v. *Ackers*, 69 California, 160; *Hayes* v. *United States*, 170 U. S. 637; *Henshaw* v. *Bissell*, 18 Wall. 225; *Holliman* v. *Prebles*, 1 Texas, 673; *Jackson* v. *Baird*, 4 Johns. 230; *Jones* v. *Garza*, 11 Texas, 186; *Jones* v. *Muisbach*, 26 Texas, 236; *Jones* v. *United States*, 137 U. S. 202; *Lanfear* v. *Hunley*, 4 Wall. 204; *Landis* v. *Brandt*, 10 How. 370; *Leese* v. *Clark*, 3 California, 16; *Lesbois* v. *Brammell*, 4 How. 449; *Lynch* v. *Bernal*, 9 Wall. 315; *McCabe* v. *Worthington*, 16 How. 86; *Maynard* v. *Massie*, 8 How. 307; *Mitchell* v. *Furman*, 180 U. S. 402; *Moore* v. *Steinbach*, 127 U. S. 70; *Pino* v. *Hatch*, 1 New Mex. 125; *Republic* v. *Thorn*, 3 Texas, 499; *Rodriguez* v. *United States*, 1 Wall. 482; *St. Paul &c. Co.* v. *Winona Co.*, 112 U. S. 720; *Sheldon* v. *Milmo*, 29 S. W. Rep. 832; *Sioux City &c. Co.* v. *United States*, 159 U. S. 349; *So. Pac. Ry. Co.* v. *United States*, 183 U. S. 519; *Stoneroad* v. *Beck*, 16 New Mex. 754; *Stoneroad* v. *Stoneroad*, 158 U. S. 241; *Trenier* v. *Stewart*, 101 U. S. 797; *United States* v. *Peralta*, 19 How. 347; *United States*

v. *Coe,* 171 U. S. 681; *United States* v. *Hartley,* 22 How. 288; *Yates* v. *Iams,* 10 Texas, 168; *Yates* v. *Houston,* 3 Texas, 433.

*Mr. Charles A. Spiess* and *Mr. S. B. Davis, Jr.,* for appellee, submitted:

Looking behind the confirmations, the claimants of the Beck grant had a better title under Mexican Government than the claimants of the Perea grant.

There is no title in claimants of Perea grant under the Mexican Government.

There is a perfect legal title in claimants of Beck grant under the Mexican Government.

The acts of officers of the Mexican Government in accordance with laws of Spain raises a legal presumption that the authority existed to dispose of public domain.

The Beck grant was ratified by Mexican Government.

The title to the Beck grant is better than that to the Perea grant even if not perfect under the laws of Mexico.

The proceedings had before tribunals and officers of United States give the better title to the Beck grant.

An approved survey was essential to attaching of confirmation, and the Beck grant was first to obtain approved survey.

The confirmation of the Beck grant was legally prior to that of the Perea grant.

In support of these contentions appellee cites: *Ainsa* v. *United States,* 160 U. S. 234; *Astiazaran* v. *Santa Rita Mining Co.,* 148 U. S. 84; *Beard* v. *Federy,* 3 Wall. 491, 493; *Berthold* v. *McDonald,* 22 How. 340; *Bryan* v. *Forsythe,* 19 How. 334; *Crowley* v. *Wallace,* 12 Missouri, 145; *Dent* v. *Emmeger,* 14 Wall. 312; *Doe* v. *Eslava,* 9 How. 446; *Ely* v. *United States,* 171 U. S. 221; *Foster* v. *Neilson,* 2 Pet. 253; *Garcia* v. *Lee,* 12 Pet. 515; *Grisar* v. *McDowell,* 6 Wall. 375, 379; *Haynes* v. *United States,* 170 U. S. 637; *Henshaw* v. *Bissell,* 18 Wall. 265, 266; *Jackson*

v. *M'Michael*, 3 Cowen, 75; *Landes* v. *Brant*, 10 How. 372, 373; *Langdeau* v. *Hanes*, 21 Wall. 521, 530; *Leese* v. *Clark*, 3 California, 16; *Malarin* v. *United States*, 1 Wall. 289; *Miller* v. *Dale*, 92 U. S. 474; *Moore* v. *Steinbach*, 127 U. S. 80; *Pino* v. *Hatch*, 1 New Mex. 133; *Pollard* v. *Files*, 2 How. 603; *Rodrigues* v. *United States*, 1 Wall. 582; *Russell* v. *Maxwell Land Co.*, 158 U. S. 258; *Rutherford* v. *Green*, 2 Wh. 296; *Shaw* v. *Kellogg*, 170 U. S. 341; *Shipley* v. *Cowan*, 91 U. S. 337; *So. Pac. R. R. Co.* v. *United States*, 183 U. S. 519; *Stark* v. *Starrs*, 6 Wall. 418; *Stoneroad* v. *Stoneroad*, 158 U. S. 241, 243; *Trenier* v. *Stewart*, 101 U. S. 810; *United States* v. *Conway*, 175 U. S. 67; *United States* v. *Green*, 185 U. S. 257; *United States* v. *Pena*, 175 U. S. 504; *United States* v. *Peralta*, 19 How. 347, 348; *United States* v. *Pico*, 5 Wall. 539; *United States* v. *Sherbeck*, 27 Fed. Cas. No. 16275; *United States* v. *Vallejo*, 1 Black, 541.

MR. JUSTICE MCKENNA delivered the opinion of the court.

In the year 1876 this suit was instituted by William P. Beck *et al.* for the purpose of determining the title of the parties to what is known as the Preston Beck grant, and for a partition of the same. This grant conflicts with a certain other grant, known as the Perea grant, to the extent of about 5,000 acres. In the year 1903, Andrieus A. Jones, appellant, was appointed receiver of the Beck grant and entered into possession of it, including the land in conflict. The St. Louis Land & Cattle Company, appellee, filed an intervening petition in the cause and set up a claim to the land in conflict and prayed as relief that the receiver be ordered to surrender to it the land claimed. Answer was filed to the petition which, among other things, denied that the Land & Cattle Company had any right, title or interest in the land.

After hearing, the district court decided in favor of the receiver and dismissed the petition in intervention. The decree was reversed by the Supreme Court of the Territory and this appeal was then taken.

The question in the case is, Of which grant is the conflict land a part?

Both grants were reported favorably by the Surveyor General of the Territory to Congress for confirmation, the Beck grant September 30, 1856, the Perea grant September 15, 1857. Both were confirmed by Congress in the act of June 21, 1860, c. 167, 12 Stat. 71. The act recited the fact of the recommendation for confirmation by the Surveyor General of the Territory of certain private land claims in the Territory and confirmed them under the numbers by which he had designated them, the Beck grant being No. 1 and the Perea grant being No. 16.

Section 4 of the act provided "That the foregoing confirmations shall only be considered as quit claims or relinquishments, on the part of the United States, and shall not affect the adverse rights of any other person or persons whomsoever."

The arguments of counsel have taken a wide range, but we think the decision of the case can be put on a short ground. Both grants have the same Mexican source, that is, they are grants by the political chief (governor) and the territorial deputation. The Beck grant was the prior one, its date being December, 1823; that of the Perea grant, March, 1825. Juridical possession was given of the Beck grant; it was not of the Perea grant. The Beck grant was presented for confirmation to the Surveyor General of New Mexico in May, 1855, and declared valid by that officer, and a report made thereof September 30, 1856, to the Secretary of the Interior for confirmation by Congress. The Perea grant was presented for confirmation in 1857, decided to be valid and reported to the Secretary of the Interior. Both grants, we have seen, were con-

firmed by Congress by the same act. In 1860 the Beck grant was duly surveyed and the survey approved, and on June 13, 1883, a patent was duly issued for the grant as surveyed. The survey of the Perea grant was not made until 1871. It will be observed, therefore, that the Beck grant, in all of its steps, preceded the Perea grant.

The Supreme Court of New Mexico, however, was of opinion that those steps could not be considered and that both grants were invalid under the Mexican law and took their efficacy solely from the act of Congress, and that, therefore, the parties "holding by the same act of Congress, in so far as their grants conflict or overlap, have each an 'equal undivided moiety of the lands within the conflict,' " applying the principle of *Southern Pacific Railroad Co.* v. *United States*, 183 U. S. 519. In this, we think the court erred. The act of Congress was not a gratuity, it was intended to be a discharge of the obligations of the treaty between the United States and Mexico. It was a confirmation of rights which existed, and as they existed.

The reports of the Surveyor General were made under the authority of the act of Congress of July 22, 1854, c. 103, § 8, 10 Stat. 308, 309, which made it the duty of that officer "to ascertain the origin, nature, character, and extent of all claims to lands under the laws, usages, and customs of Spain and Mexico." He was required to make report thereof "denoting the various grades of title, with his decision as to the validity or invalidity of each of the same under the laws, usages and customs of the country before its cession to the United States, . . . which report shall be laid before Congress for such action thereon as may be deemed just and proper, with a view to confirm *bona fide* grants, and give full effect to the treaty of eighteen hundred and forty-eight between the United States and Mexico."

The proceedings, therefore, for the confirmation of titles,

derived from Mexico commenced with the Surveyor General and were consummated by the confirming act, the Surveyor General deciding in the · first instance. The · petition to him "is the commencement of proceedings, which necessarily involve the validity of the grant from the Mexican government." Congress, however, constituted itself the tribunal of ultimate decision of the validity or invalidity of the claim, as, of course, it might do in the discharge of the treaty obligations, or delegate that duty to the judicial department. *Tameling* v. *United States Freehold Co.,* 93 U. S. 644; *Astiazaran* v. *Santa Rita Mining Co.,* 148 U. S. 80, 82, 84; *Stoneroad* v. *Stoneroad,* 158 U. S. 240, 248.

The confirmation, therefore, cannot be dissociated from what preceded it, and it may be said of such direct confirmation by act of Congress, as has been said of confirmation through special tribunals created by Congress, that it constitutes a declaration of the validity of the claim under the Mexican laws and that the claim is entitled to recognition and protection by the stipulations of the treaty. *Beard* v. *Federy,* 3 Wall. 478, 492.. And if there be claims under two patents, each of which reserves the rights of the other parties, the inquiry must extend to the character of the original concession. The controversy can only be settled by determining which of these two gives the better right to the demanded premises. *Henshaw* v. *Bissell,* 18 Wall. 255, 266.

In *Miller* v. *Dale,* 92 U. S. 473, 474, there was a conflict between a concession of the Mexican government, confirmed by the tribunals of the United States and a survey thereon and a patent of the United States issued upon a similar confirmed concession, and the question in the case was which gave the better right to the premises. This court said: "To answer the question we must look into the character of the original concessions; and, if they furnish no guide to a correct conclusion, we must seek a

solution in the proceedings had before our tribunals and officers by which the claims of the parties were determined." This rule is the only just and practical one, and, besides, the act of Congress confirming the Beck and Perea grants saved to each rights against the other by § 4 of the act.

It is urged, however, that this doctrine is opposed by *Dent* v. *Emmeger*, 14 Wall. 308, 312, *Les Bois* v. *Bramell*, 4 How. 449, and the cases cited by them. In *Dent* v. *Emmeger*, it was said of grants which were described as of "imperfect obligation and affected only the conscience of the new sovereign" and received from it "a vitality and efficacy which they did not before possess," that "when confirmed by Congress they became American titles and took their validity wholly from the act of confirmation and not from any French or Spanish element which entered into their previous existence. The doctrine of senior or junior equities and of relation back has no application in the jurisprudence of such cases."

Of the same character were the rights in the other cases. In some of them there were mere orders for surveys and promises of title which the new sovereign was under no obligation to yield to. In the case at bar we are dealing with rights which were recognized by the new sovereign because they were supposed to have legal validity under the old sovereign.

It is true in the case at bar, such validity is contested, and the contest is certainly justified as to the Perea grant. It was decided in *Hayes* v. *United States*, 170 U. S. 637, 643, 644, that after it was decreed by the general constituent Congress July 6, 1824, that "the province of New Mexico remains a territory of the federation," the adoption by the same Congress of a general colonization law, August 18, 1824, and a permanent constitution October 24 of the same year, the officials of the Territory had no "power to dispose of the public lands, even though it be

*arguendo* conceded that such power had been theretofore possessed by the officials who exercised authority within the area which was made a territory by the constitution." But this only in passing. We are not called upon to consider the power of the territorial officers. The validity of the grants have been pronounced by Congress and we are only required to consider their relation to each other and the public domain. We have seen that the Beck grant in all of its steps, was prior to the Perea grant. Juridical possession was given of it before the Perea grant was applied for and the conveyance of the land embraced within its boundaries made complete. It was confirmed first by the Surveyor General of the Territory and surveyed first by the Interior Department, and a survey "was essential to its accurate segregation and delimitation." *Stoneroad* v. *Stoneroad, supra,* 158 U. S. 240, 250.

It follows from these views that the land in conflict is part of the Beck grant, and the judgment of the Supreme Court of the Territory is reversed and the cause remanded to the Supreme Court of the State for further proceedings not inconsistent with this opinion.

*Reversed.*