2004-NMCA-043

89 P.3d 672

**Henry D. DEATON, Plaintiff–Appellee,**

v.

**Rosarita GUTIERREZ, Hilbert F. Gutierrez, and Delora M. Gutierrez, Defendants–Appellants.**

No. 22,409.

Court of Appeals of New Mexico.

Dec. 18, 2003.

Certiorari Denied, No. 28,473,
March 13, 2004.

Kim E. Kaufman, Albuquerque, NM, for Appellee.

Narciso Garcia, Jr., Garcia Law Office, Albuquerque, NM, for Appellants.

## OPINION

PICKARD, Judge.

{1} Rosarita Gutierrez, Hilbert Gutierrez, and Delora Gutierrez (collectively referred to as Defendants), appeal the trial court's order granting summary judgment in favor of Henry Deaton (Plaintiff), in his suit to quiet title. We affirm the order of summary judgment.

## BACKGROUND

{2} Plaintiff filed a complaint on July 30, 1997, seeking to quiet title to several tracts of land located in Sandia Park in Bernalillo County, which are identified as Tracts 1, 4, and 5 of Small Holding Claim (SHC) 2994.

{3} This land was conveyed to Plaintiff by Jose Sanchez, an heir of Meliton Espinoza, along with some additional land, via a quitclaim deed executed on January 30, 1990. Meliton Espinoza had applied for a patent to these lands in 1894, which was rejected in 1911. Following the rejection, the General Land Office requested a resurvey of the lands to eliminate small holding claims and show the lands as public lands. Tract 3 was resurveyed, but the remaining Tracts, 1, 2, 4, and 5 remained intact and unpatented. In 1973, in response to a letter from an attorney investigating the situation, the Bureau of Land Management (BLM) examined the case file and reached the determination that the claim had been rejected in error. The BLM informed the attorney of the situation and of the actions necessary to ensure patent would issue. However, patent did not issue from the United States to the heirs of Espinoza until December 18, 1990. Prior to patent issuing in 1990, notice was published in the local paper, stating that protests from any adverse claimants or from individuals who knew of any substantial reason why patent should not issue, would be accepted. No protests were filed.

{4} Defendants Hilbert and Delora Gutierrez did, however, answer Plaintiff's complaint to quiet title, in which they argued that they had title through either fee simple ownership or adverse possession. In an amended answer, they later added the theory of acquiescence. They also asserted the affirmative defenses of failure to state a claim, laches, unclean hands, and estoppel, and they filed counterclaims, asking that title be quieted in them and alleging fraud, abuse of process, slander of title, prima facie tort, and negligence.

{5} Defendant Rosarita Gutierrez answered separately, asking to quiet title to the property in her favor and claiming, as affirmative defenses, failure to state a claim upon which relief can be granted, laches, unclean hands, and estoppel. She also alleged abuse of process by Plaintiff. Her quiet title counterclaim was based on her apparent misconception that the property at issue included SHC 3001, which she owned by virtue of a

federal patent. When Rosarita Gutierrez realized that the land at issue was not SHC 3001, but rather SHC 2994, she amended her answer. The amended answer deleted the portion of her answer relying on her patent for SHC 3001, and instead relied upon adverse possession and acquiescence as bases for ownership. Rosarita Gutierrez has lived on a portion of this land since 1931. She traces her claim to tracts 4 and 5 of SHC 2994 to deeds which her husband, Jesus Gutierrez, obtained from Epifanio Garcia in 1934 and 1950. In 1977, Rosarita and Jesus Gutierrez conveyed to Hilbert Gutierrez and his son, by warranty deed, tract 4 of SHC 2994. In 1991, this land was placed in Hilbert and his wife Delora's name. Hilbert and Delora claim title in fee simple through the 1977 deed. Defendants do not claim to be able to show any chain of title to the government.

{6} Defendants also filed a cross-claim against the estate of Meliton Espinoza, as a third-party defendant, to quiet title to the disputed lands and to assert ownership by adverse possession. The trial court issued a default judgment against the estate of Meliton Espinoza and quieted title against the estate of Espinoza, in favor of Defendants.

{7} During the course of litigation, Defendants moved for summary judgment more than once, which motions were denied by the trial court. In denying summary judgment, the trial court determined that, as a matter of law, "adverse possession cannot be initiated before the issuance of a patent." Defendants petitioned this Court for interlocutory review of this ruling, and this petition was denied.

{8} Relying on the trial court's determination that adverse possession cannot be initiated before the issuance of a patent, Plaintiff filed motions for summary judgment against Defendants. Plaintiff argued that any claims made by Defendants of having acquired title to the lands by adverse possession were without merit as the statutory period of ten years could not have begun prior to December 1990. He argued that because the remaining claims all required a claim to title, those claims should also be dismissed. In support of his motion for summary judgment,

Plaintiff submitted the 1990 patent demonstrating that the United States had not released the land at issue until 1990. The trial court granted Plaintiff's motion for summary judgment in its entirety. The trial court determined that the issuance of the patent in 1990 was dispositive because the government held title to the land until the patent issued, and the government's ownership of the property negated Defendants' claims to title.

{9} Defendants moved for reconsideration of the grants of summary judgment, filing nearly 100 pages of documentation, most of which were not previously filed. The trial court refused to consider the additional materials and denied the motion for reconsideration. To the extent that Defendants argue that the trial court abused its discretion in failing to consider the materials, and in denying the motion, we disagree. In *In re Estate of Keeney* 121 N.M. 58, 60–61, 908 P.2d 751, 753–54 (Ct.App.1995), we addressed when the trial court was within its discretion in considering additional materials. In *Keeney*, we determined that it was appropriate for the trial court to have considered the additional materials because in that case the trial court determined that the late filing was due to excusable neglect. *Id.* at 61, 908 P.2d at 754. In this case, however, there was no evidence of excusable neglect. Rather, the earlier omission of these documents appears to have been purposeful. Also, in the case before us, unlike in *Keeney*, Plaintiff moved to strike the additional materials. *See id.* As we have determined that the trial court was acting within its discretion in refusing to consider the materials, we will not consider the additional materials submitted with the motion for reconsideration. *See id.* (determining that the reviewing court may consider materials submitted with a motion for reconsideration *if the trial court considered the materials*); *cf. Rivera v. Trujillo,* 1999 NMCA 129, ¶ 19, 128 N.M. 106, 990 P.2d 219 (affirming that the trial court may use its discretion not to consider untimely presented materials filed with a motion to reconsider).

{10} Furthermore, to the extent that Defendants argue that the trial court erred in denying the motion because the court did not have "good reason" to deny the motion,

426

we disagree. *See Laffoon v. Galles Motor Co.*, 80 N.M. 1, 3, 450 P.2d 439, 441 (Ct.App. 1969) (stating the action of a court must always be supported by a good reason). Defendants' motion for reconsideration was merely a restatement of the arguments they had already advanced against granting summary judgment, with the new documentation attached. As such, the trial court, having appropriately determined that it would not consider the additional materials, had good reason for denying the motion in its entirety. *See Rivera*, 1999–NMCA–129, ¶ 19, 128 N.M. 106, 990 P.2d 219.

{11} Finally, we do not specifically act on Plaintiff's motion to strike portions of the reply brief. The motion requests that we not consider arguments made in the reply brief in reliance on the additional materials. Although Plaintiff appropriately filed the motion because there were no subsequent briefs he was entitled to file, our refusal to consider the improper material makes it unnecessary for us to specifically act on the motion. *Cf. In re Aaron L.*, 2000–NMCA–024, ¶ 27, 128 N.M. 641, 996 P.2d 431 (noting that separate motion to strike is ordinarily unnecessary and that parties can argue inappropriate reliance on materials in their briefs, and this Court will rule on the matter in its opinion).

*DISCUSSION*

*Standard of Review*

{12} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. On appeal, we review de novo the district court's decision to grant summary judgment. *See Hasse Contracting Co. v. KBK Fin., Inc.*, 1999–NMSC–023, ¶ 9, 127 N.M. 316, 980 P.2d 641. We view the pleadings, affidavits, and depositions presented for and against a motion for summary judgment in a light most favorable to the nonmoving party. *See Gardner–Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). Summary judgment is foreclosed either when the record discloses the existence of a genuine controversy concerning a material issue of fact or when the trial court granted summary judgment based

upon an error of law. *See id.; see also Garcia v. Sanchez*, 108 N.M. 388, 395, 772 P.2d 1311, 1318 (Ct.App.1989). In addition, summary judgment may be proper even though some disputed facts remain, if the disputed facts relate to immaterial issues. *See Oschwald v. Christie*, 95 N.M. 251, 253, 620 P.2d 1276, 1278 (1980).

*Legal Status of SHC 2994 Prior To Issuance of Patent*

{13} We first address whether the trial court was correct in its conclusion that the government held title to the land until the patent issued. Defendants contend that the land at issue was private land prior to issuance of the patent. This contention, and much of Defendants' arguments, appear to be premised on their misapprehension that the Espinoza patent was adjudicated by the Court of Private Land Claims, and that accordingly it was private, not government, land prior to the issuance of the patent.

{14} Espinoza's patent was issued pursuant to §§ 16 and 17 of the Court of Private Land Claims Act of March 3, 1891 (the Act), which provides for issuance of patents based on adverse possession. 51 Cong. Ch. 539 (1891) (formerly codified at 26 Stat. 854). The patent was not issued pursuant to §§ 1 through 8, which concern private land, and the government's release of any claim thereto, as Defendants argue. Section 17 specifically addresses adverse possession by individuals whose ancestors, grantors, or lawful successors became citizens of the United States by reason of the Treaty of Guadalupe Hidalgo. *Id.* § 17. The land in this case was ceded to the United States after the Treaty of Guadalupe Hidalgo. Sections 16 and 17 were exceptions to the general jurisdiction of the Court of Private Land Claims. *Id.* § 18 (stating that claims arising under §§ 16 and 17 shall not be adjudicated by the court created by this act). The patent to Espinoza was considered by and eventually issued by the Bureau of Land Management. Until that time, title to the land remained in the United States. *See Ainsa v. New Mexico & A.R. Co.*, 175 U.S. 76, 79, 20 S.Ct. 28, 44 L.Ed. 78 (1899) (stating that title to land ceded by an independent nation to the Unit-

ed States remains in the United States until title is passed or relinquished to the claimants by an act of confirmation). It is also evident from the BLM documentation that title to the land was in the United States prior to issuance of the patent, which, in fact, continues to reserve to the United States a right of way on said property. Accordingly, we conclude that the district court correctly determined that the land was public land prior to the issuance of the patent.

{15} Whether the land was public or private is critical as one can not adversely possess government property. *See Christmas v. Cowden*, 44 N.M. 517, 533, 105 P.2d 484, 493 (1940) (observing that adverse possession of public lands cannot begin until issuance of patent therefor). To the extent that Defendants rely on the Color of Title Act, 43 U.S.C. §§ 1068 to 1068b (2000), to argue the contrary, we observe that 43 U.S.C. §§ 1068 to 1068b address application for and issuance of patents to parties claiming adverse possession of public land, and specifically exclude cases of conflicting claims. *See id.* There is no contention that Defendants ever applied for a patent to SCH 2994 based on adverse possession, as Espinoza did.

{16} Nor can one obtain government property through acquiescence. *See Stone v. Rhodes*, 107 N.M. 96, 98, 752 P.2d 1112, 1114 (Ct.App.1988) (stating that the doctrine of acquiescence applies only to privately owned land, and not to government land). In addition, to the extent Defendants argue that there was sufficient time following the issuance of the patent for them to obtain the property through acquiescence, we disagree. *See Cauble v. Beals*, 96 N.M. 443, 445, 631 P.2d 1311, 1313 (1981) (observing that "[a]lthough no New Mexico case has established the minimum period of recognition required to acquire title by acquiescence, the cases in which the application of the doctrine has been upheld all involve a period of recognition *considerably longer* than the ten years required to acquire title by adverse possession" (emphasis added)).

{17} Furthermore, any claim by Defendants of fee simple title cannot stand, as a

deed from a private individual conveying land owned by the United States is clearly ineffectual. *In re Estate of Duncan v. Kinsolving*, 2003–NMSC–013 ¶ 11, 133 N.M. 821, 70 P.3d 1260 (noting general principle that one cannot convey more than one owns). At most, the deeds relied on by Defendants could evidence color of title, an element of adverse possession, which, as noted, cannot be had against the government, except through special statutory processes, like the one noted above, which Defendants did not pursue. *See* NMSA 1978, § 37–1–22 (1973); *Christmas*, 44 N.M. at 533, 105 P.2d at 493; *see also In re Estate of Duran*, 2003–NMSC–008, ¶ 20, 133 N.M. 553, 66 P.3d 326 (observing that a void deed will satisfy the color of title requirement as a claimant under a valid deed "would hardly need to rely on the doctrine of adverse possession").

*Adverse Possession Through the Doctrine of Relation Back*

{18} Defendants argue that, even if legal title rested with the United States, when a patent issues from the United States, the patent relates back to the date of entry on the land allowing, through a legal fiction, adverse possession to commence from that earlier time. The doctrine of relation back is a "principle by which an act done at one time is considered by a fiction of law to have been done at some antecedent period." *Gibson v. Chouteau*, 80 U.S. ( 13 Wall.) 92, 100–01, 20 L.Ed. 534 (1871). Under this theory, Defendants argue, adverse possession could initiate when Espinoza applied for his patent in 1894, which they consider to be Espinoza's entry onto the land.

{19} New Mexico has determined that adverse possession of public lands cannot begin until issuance of a patent therefor. *See Christmas*, 44 N.M. at 533, 105 P.2d at 493 (relying on *Gibson*, 80 U.S. (13 Wall.) at 102–03). In *Gibson*, the recipient of a patent brought an ejection action against someone who had occupied the land prior to issuance of the patent. The Court held that occupation of the land by the subject of the ejection action did not constitute a sufficient equity in favor of the occupant to control the legal title subsequently conveyed or bar the ejection

action. *Id.* at 101–04. In so holding, the Court explained that

> the doctrine of relation is a fiction of law adopted by the courts *solely for the purposes of justice, and is only applied for the security and protection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title.* The defendants in this case were strangers to that party and to his equitable claim, or equitable title, as it is termed, not connecting themselves with it by any valid transfer from the original or any subsequent holder. The statute of limitations of Missouri did not operate to convey that claim or equitable title to them.

*Id.* at 101–02 (footnote omitted and emphasis added).

{20} The cases relied upon by Defendants for the proposition that New Mexico has held that patents relate back to the date of entry comport with the view, as expressed in *Gibson,* that the doctrine of relation back exists to protect the interests of the party who ultimately receives a patent from the United States Government. In *Stoneroad v. Beck,* 16 N.M. 754, 774, 120 P. 898, 906 (1912), *reversed on other grounds by Jones v. St Louis Land & Cattle Co.,* 232 U.S. 355, 34 S.Ct. 419, 58 L.Ed. 636 (1914), our Supreme Court explicitly stated that the doctrine of relation back applies only "so far as it may be necessary to cut off intervening rights." (Internal quotation marks and citation omitted.) Defendants urge this Court to allow the doctrine of relation back to operate to allow claims by interveners. As in *Gibson,* Defendants in this case are "strangers" to the eventual recipients of the patent and thus can not benefit from the doctrine of relation back. 80 U.S. (13 Wall.)at 101.

{21} To the extent that Defendants rely on *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 132 F.3d 1316, 1320 (10th Cir.1997), we note that *Barlow* addresses mining patents and, as such, is of limited assistance. *See Sweet v. Rivers,* 63 N.M. 293, 300, 318 P.2d 260, 264 (1957) (observing that the rule and practice of the Land Department with respect to agricultural lands are not applicable to applications for mineral

patents). However, to the extent that the *Barlow* case is informative, once again the doctrine of relation back was recognized to protect the rights of the claimant (and the claimant's assignees) who eventually received the patent, and not to validate the rights of an intervening party. *James Barlow Family Ltd. P'ship,* 132 F.3d at 1320–21.

{22} We accordingly find that the trial court correctly ruled that the statutory period for adverse possession could not begin to run until the patent issued.

*Defendants' Tort Claims*

■ {23} As we have determined that Defendants have no claim to title to the disputed property, we agree with Plaintiff's contention that Defendants have no standing to maintain their claims for fraud, abuse of process, slander of title, prima facie tort, and negligence. "To acquire standing, a plaintiff must demonstrate the existence of (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Forest Guardians v. Powell,* 2001–NMCA–028 ¶ 16, 130 N.M. 368, 24 P.3d 803 (internal quotation marks and citations omitted). As Defendants have no title to the disputed property, we fail to see how they either could have been injured in fact by any conduct by Plaintiff or how a favorable decision could enure to their benefit. *See, e.g., Bynum v. Bynum,* 87 N.M. 195, 199, 531 P.2d 618, 622 (Ct.App. 1975) (observing that an action for slander of title could not be maintained where the complaining party had no title to slander).

*Laches, Unclean Hands, and Estoppel*

■ {24} Defendants also argue that summary judgment should have been denied based on the affirmative defenses of laches and unclean hands. However, these are affirmative defenses, not counterclaims. *See* Rule 1–008(C) NMRA 2003. In an action to quiet title, "before the effects of the affirmative defenses need be considered, appellants first had to establish their right to the relief they sought, absent these defenses." *Morris v. Merchant,* 77 N.M. 411, 414, 423 P.2d 606, 607 (1967). As noted above, Defendants

have failed to establish title to the disputed property, via either adverse possession, acquiescence, or deed.

{25} Defendants have failed to explain, and we do not see, how in the absence of Defendants' ability to establish their right to the relief they sought (title), these affirmative defenses apply to the case at hand. *Cf. State v. Neswood,* 2002–NMCA–081, ¶ 10, 132 N.M. 505, 51 P.3d 1159 (declining to address issue where there was no actual argument with regard to how a specific rule applied to the case at hand). Nor do Defendants explain, and we do not see, how laches or unclean hands could establish title in the Defendants in this case. The one case cited by Defendants in support of their laches argument addresses only when a "holder of legal title" can set up the defense of laches. *See Garcia v. Garcia,* 111 N.M. 581, 588, 808 P.2d 31, 38 (1991). The one case cited by Defendants in support of their unclean hands defense is inapposite. *See Mechem v. City of Santa Fe,* 96 N.M. 668, 670–71, 634 P.2d 690, 692–93 (1981) (holding that the doctrine of unclean hands did not bar property owner from seeking equitable relief from personal restriction to special exception zoning permit imposed upon him by city).

{26} With regard to the affirmative defense of estoppel, Defendants make no argument on appeal, and we accordingly deem it abandoned. *See In re Doe,* 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (stating that courts should not consider arguments not raised by the parties); *cf. State v. Ramos,* 115 N.M. 718, 720, 858 P.2d 94, 96 (Ct.App.1993) (stating that, "[i]ssues raised in the docketing statement but not briefed are deemed abandoned"), *modified on other grounds by State v. Gomez,* 1997–NMSC–006, ¶ 32, 122 N.M. 777, 932 P.2d 1.

### Plaintiff's Prima Facie Case for Summary Judgment

{27} To the extent that Defendants argue on appeal that Plaintiff failed to make a prima facie showing of entitlement to summary judgment, we disagree. *See Bartlett v. Mirabal,* 2000–NMCA–036, ¶ 17, 128 N.M. 830, 999 P.2d 1062. As noted throughout this opinion, the determination that the land was public land is dispositive of the issues raised in this case. Thus, Plaintiff's submission of the 1990 patent as evidence that the land was public land until 1990, coupled with submission of the deed evidencing that title to the property lay in Plaintiff, satisfied Plaintiff's burden of making a prima facie showing of entitlement to summary judgment against Defendants.

{28} Once the movant has made a prima facie showing that the movant is entitled to summary judgment, "the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson,* 113 N.M. 331, 334–35, 825 P.2d 1241, 1244–45 (1992). In order to satisfy this burden, a party may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts admissible in evidence showing that there is a genuine issue for trial. *See* Rule 1–056(E) NMRA 2003; *Storey v. Univ. of N.M. Hosp.,* 105 N.M. 205, 207, 730 P.2d 1187, 1189 (1986). Even though some disputed facts remain, if the disputed facts relate to immaterial issues, summary judgment is still appropriate. *See Oschwald,* 95 N.M. at 253, 620 P.2d at 1278. Upon our review of the record, in its entirety, Defendants failed to create an issue of material fact with regard to the public status of the land. To the extent that Defendants argue that there are genuine issues of material fact that do not go to the dispositive fact that the land was public land prior to the issuance of the patent, these contentions are irrelevant. *Id.* Accordingly, we find that the trial court was correct in granting Plaintiff's motion for summary judgment in its entirety.

### Defendants' Procedural Arguments

{29} Defendants also raise two procedural arguments. They argue both that Plaintiff's motion for summary judgment did not comply with Rule 1–056 because Plaintiff did not rely on supporting affidavits and that Plaintiff's motion was untimely. Rule 1–056 does not require the movant to attach affidavits. *See* Rule 1–056(A) (stating that "[a] party seeking to recover upon a claim, counterclaim or cross-claim or to obtain a declaratory judgment may move with *or without*

*supporting affidavits* for a summary judgment in his favor upon all or any part thereof") (emphasis added). As noted above, Plaintiff's submission of the 1990 patent as evidence that the land was public land until 1990, together with the deed to him that was part of the court file, satisfied Plaintiff's burden of making a prima facie showing of entitlement to summary judgment against Defendants, in light of the specific arguments advanced in his motion.

{30} Defendants also argue that it was error for the trial court to consider Plaintiff's motions because they were untimely filed. The motions were filed approximately one month prior to trial. Our rules require only that motions for summary judgment be "filed within a reasonable time prior to the date of trial to allow sufficient time for the opposing party to file a response and affidavits, depositions or other documentary evidence and to permit the court reasonable time to dispose of the motion." Rule 1–056(D)(1). It is clear from the record that there was sufficient time for Defendants, not only to respond, but also for Plaintiff to reply and for the court to hold a hearing on the motions. Therefore, the trial court did not abuse its discretion in hearing the motions. Furthermore, Defendants make no showing of prejudice. "In the absence of prejudice, there is no reversible error." *State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct.App.1994). Moreover, even if the motion was untimely, where the trial court addresses an untimely motion on the merits, an appellate court may review the question presented. *State v. Diaz*, 100 N.M. 210, 212, 668 P.2d 326, 328 (Ct.App.1983).

*Statements Regarding Settlement*

{31} Defendants contend that they suffered prejudice by virtue of Plaintiff inappropriately referring to settlement offers during the summary judgment hearing. Plaintiff specifically stated that "[P]laintiff has offered some reasonable and viable solutions to those encroachments." With regard to Defendants' allegation of prejudice, we note that, "[a]n assertion of prejudice is not a showing of prejudice," and "[i]n the absence of prejudice, there is no reversible error."

*In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318; *Fernandez*, 117 N.M. at 677, 875 P.2d at 1108. Defendants offer no evidence of prejudice other than the ultimate decision by the trial court to rule against them. We presume that a judge is able to properly evaluate the evidence, and accordingly, that erroneous admission of evidence is harmless unless it appears that the judge must have relied upon the improper evidence in rendering a decision. *See State v. Roybal*, 107 N.M. 309, 310, 756 P.2d 1204, 1205 (Ct.App.1988); *In re Doe*, 89 N.M. 700, 703, 556 P.2d 1176, 1179 (Ct.App.1976). To the extent that Defendants argue that the judge must have inappropriately relied on such evidence, the record demonstrates to the contrary. Defendants objected to Plaintiff's statement regarding settlement negotiation and the court said "[o]kay," and proceeded to direct Plaintiff to "stay away from the settlement stuff." This belies any notion that the trial court may have relied on the statement by Plaintiff in granting Plaintiff's motion for summary judgment.

*Default Judgment Against Estate of Espinoza*

{32} Defendants filed cross-claims against the estate of Meliton Espinoza to quiet title in the disputed lands. The trial court granted a default judgment and quieted title in the disputed lands against the estate and heirs of Meliton Espinoza and in favor of Defendants. Defendants, on appeal, assert that quieting title against the persons through whom Plaintiff claims title precludes Plaintiff's quiet title action against Defendants. We find that Defendants failed to preserve this argument below. Although Defendants made reference below to their entitlement to a default judgment against the estate and heirs of Meliton Espinoza, Defendants did not argue that the default judgment would also preclude judgment in favor of Plaintiff. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987). Furthermore, while the order quieted title against

the estate and heirs of Meliton Espinoza, it did not quiet title against Plaintiff. We discern no reason for Plaintiff's claims to be precluded because of the default judgment against the third party defendants.

## CONCLUSION

{33} We affirm the trial court's entry of summary judgment in favor of Plaintiff on his action to quiet title, in its entirety.

{34} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge and MICHAEL D. BUSTAMANTE, Judge.