This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41722**

**EMIL MOTTOLA,**

   Petitioner-Appellant,

v.

**TRIAD NATIONAL SECURITY, LLC,**

   Respondent-Appellee.

**APPEAL FROM THE DISTRICT COURT OF LOS ALAMOS COUNTY**
**Kathleen McGarry Ellenwood, District Court Judge**

Emil Mottola
Santa Fe, NM

Pro Se Appellant

Bardacke Allison Miller LLP
Justin Miller
Michael Woods
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**MEDINA, Chief Judge.**

**{1}**   The memorandum opinion filed on December 10, 2025, is hereby withdrawn and the following opinion is substituted. This case arises out of Respondent Triad National Security's termination of the employment of Dr. Emil Mottola, Ph.D (Petitioner). Petitioner was employed at Los Alamos National Laboratory (LANL) for over thirty years as a research scientist. The ostensible reason for the termination was Petitioner's failure to satisfy one requirement of his position, which was to seek and obtain funding to support his research projects. However, Petitioner believed his employment was

terminated due to his age or in retaliation for his union activities. Pursuant to the employment contract between the parties the dispute was submitted to an arbitrator for binding arbitration. Following discovery and motion practice, the arbitrator granted summary judgment to Respondent on both claims. Petitioner filed an action in district court challenging the arbitrator's decision, but the district court denied his request to vacate the arbitration decision. This appeal followed. Although Petitioner was represented by union counsel below, he is representing himself on appeal. We affirm the district court.

## BACKGROUND

**{2}** As noted above, Petitioner was a long-term employee at LANL at the time of the events in question. In November 2018, Respondent, a federal contractor, assumed management control of LANL, replacing the previous managing entity. Petitioner signed a new employment contract with Respondent. Under that contract, as was the case with his previous employment contracts, Petitioner's scientific research did not constitute his only job duty. He was also required to seek funding from both outside sources, such as the federal Department of Energy (DOE), and from internal LANL funding that was allocated from a central pot of money through a competitive committee process. Essentially, therefore, he was required to fully fund his own salary as well as the salaries of subordinates working with him through this combination of external grants and LANL funds. In March 2021, following years of funding shortfalls, Respondent terminated Petitioner's employment and informed him that he could apply for other positions with LANL, which presumably carried no requirement that he raise funds to support his work. Petitioner objected to the termination and, represented by his union, filed an arbitration claim.

**{3}** As noted earlier, Petitioner raised two assertions in his arbitration claim: first, that he was terminated due to his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 to -34; and second, that he was terminated in retaliation for his union activities, specifically a trip to Washington, D.C., with other union personnel, for the purpose of meeting with Senator Ben Ray Luján of New Mexico to express concern over LANL's treatment of older employees. One of his primary contentions was that his failure to obtain adequate funding was caused by Respondent itself, in that upper management (in particular an individual named John Sarrao, a management-level employee of Respondent) interfered with his efforts to obtain both external and internal funding. The arbitration was conducted in accordance with rules established by the American Arbitration Association, which allow for summary disposition of an arbitration case. Summary disposition of a claim is also authorized by New Mexico's Uniform Arbitration Act (UAA), NMSA 1978, §§ 44-7A-1 to -32 (2001).

**{4}** Following discovery that included depositions, extensive production of documents, and written interrogatories, Respondent moved for summary judgment with supporting documentation. Petitioner filed a response, also including supporting documents, which did not contest the fact that funding shortfalls had regularly occurred, including the 2021 shortfall that ostensibly led to the termination. However, the

response maintained that Respondent management was responsible for the lack of funding, that Respondent favored younger scientists in allocating internal LANL funding, and that Respondent had a policy of developing younger scientists and pushing out older scientists. The response also raised the issue of retaliation, pointing out that one individual who attended the meeting in Washington, D.C., Todd Ringler, was acting in a dual capacity; he was a staffer for Senator Luján, but was also listed as a subordinate of John Sarrao. Petitioner contended that John Sarrao was most likely made aware of the D.C. meeting by Ringler and took adverse action against Petitioner due to this union activity.

{5}     Having considered the submissions of the parties, the arbitrator issued an opinion addressing Petitioner's claims in detail. The arbitrator determined that Petitioner had failed to raise a genuine issue of material fact concerning either the ADEA issue or the retaliation claim, and granted summary judgment to Respondent. Petitioner filed a petition in district court, seeking to vacate the arbitration decision; the district court denied the petition, and this appeal followed.

## DISCUSSION

### I.     Standard of Review of Arbitration Cases

{6}     This Court's review of arbitration decisions, as was the district court's, is severely limited by statute. Neither the district court nor this Court may review the substantive validity of the arbitration decision. *See State v. Am. Fed'n of State, Cnty., & Mun. Emp. Council 18* (*AFSCME*), 2012-NMCA-114, ¶ 13, 291 P.3d 600. If the arbitrator commits errors of fact or law, such mistakes are not reviewable by, and may not be overturned in a court of law. *Id.* The UAA establishes the only aspects of an arbitration decision that are legally reviewable in the district court or on appeal. *Fernandez v. Farmers Ins. Co. of Ariz.*, 1993-NMSC-035, ¶ 9, 115 N.M. 622, 857 P.2d 22 ("[UAA] controls the scope of the district court's review of an arbitration award."); *see* § 44-7A-24. An arbitration award may be vacated by a court only if the arbitrator commits corrupt acts, fraud, or other "undue means"; exhibits evident partiality, misconduct, or corruption; refuses to consider evidence that is material to the controversy; conducts the arbitration hearing contrary to the provisions of the UAA; or exceeds their powers. *See* § 44-7A-24(a). It is important to note that this Court cannot review the merits of the arbitrator's decision under the guise of analyzing one of the above statutorily-authorized bases for review; for example, we cannot review the merits of the arbitrator's decision, conclude that the decision was legally wrong, and then use that conclusion to say that the arbitrator exhibited partiality or exceeded his powers. In sum, as we stated above, we are strictly forbidden from assessing the legal or factual merits of the arbitrator's decision, and must limit our consideration to the structural issues set out in the UAA. *See Fernandez*, 1993-NMSC-035, ¶ 9.

### II.     Issues Not Preserved Below

**{7}** Petitioner raises several issues in his briefing, including a number that were not raised in the district court. We briefly dispose of those issues, as the failure to raise them in district court, and thus allow that court an opportunity to rule on them, renders them unpreserved for appeal. *See, e.g., Valerio v. San Mateo Enters., Inc.*, 2017-NMCA-059, ¶ 27, 400 P.3d 275 (refusing to address the merits of an argument raised for the first time on appeal).

**{8}** Petitioner's unpreserved issues include his contention that statutory rights, such as those established by the ADEA, cannot be superseded by arbitration agreements, and therefore his ADEA claim should not have been subject to arbitration at all. This argument was never made to the district court, either in the petition to vacate the arbitration decision or at the hearings held on that petition. We note also that, while we do not intend to definitively decide the question given the fact it was not raised below, it appears to be legally settled that the ADEA and other federal antidiscrimination claims are subject to arbitration where the contract between the parties contains an arbitration clause covering such claims. *See, e.g., 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009) (noting that the ADEA does not preclude arbitration); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27-35 (1991) (containing an extensive discussion of the issue).

**{9}** Another issue Petitioner argues on appeal, but failed to argue below, is that the arbitrator showed evident partiality during the discovery process by, for example, allowing Respondent to file late discovery responses. Again, this argument was not made to the district court; the question of discovery during the arbitration process was not mentioned in the petition to vacate or at the hearings. We will therefore not address it on appeal. *See Valerio*, 2017-NMCA-059, ¶ 27.

**{10}** Petitioner also raises a new legal theory in his appeal, arguing that a court has the power to overturn an arbitration decision for manifest disregard of the law. Petitioner contends the arbitrator disregarded the law because he mistakenly found that Petitioner was not qualified for his position, due to his failure to satisfy one of the requirements of his position: the mandate that he raise funds to support his unit's work. We will discuss this claimed legal error below. At this point, however, we need point out only two things: first, Petitioner did not mention this "manifest disregard of the law" theory in the district court, and therefore failed to preserve it for appeal, and second, manifest disregard of the law is not one of the statutory grounds upon which a court in New Mexico can overturn an arbitrator's decision.

**{11}** The final unpreserved argument Petitioner now raises is one that is not only directly contrary to his own briefing on appeal but is contrary to statements he made, through counsel, at the district court hearing. Petitioner contends that allowing summary judgments in arbitration cases, where a statutory antidiscrimination right such as that protected by the ADEA is involved, denies him of his right to a full and fair hearing of such a claim. Yet Petitioner also conceded in his brief in chief that the rules applicable to his arbitration case did allow for summary disposition of the case. Furthermore, in the district court, Petitioner's counsel conceded that he was not arguing that summary

judgment should not have been allowed in the arbitration case. Instead, he maintained only that in reviewing an arbitration decision, courts should not accord the same deference to a decision arising out of a summary judgment as they do to a decision made following a full hearing of the case. Since Petitioner did not claim below that an arbitration summary judgment is categorically inappropriate for ADEA or other discrimination claims, we will not address that argument on appeal. *See id.* We do note that, while we need not decide the issue in this case, the UAA specifically provides for summary dispositions in arbitration cases, without limiting that principle to certain types of cases. *See* § 44-7A-16(b)(2).

## III.    Preserved Issues

## A.    Failure to Hold an Evidentiary Hearing

**{12}**    We now turn to the issues that Petitioner did preserve below. The first claim of error involves a procedural issue: the district court's failure to hold an evidentiary hearing. Our Supreme Court has stated that in reviewing an arbitration award, the district court should hold an evidentiary hearing concerning any issues presented by the petition to vacate the arbitration decision. *See Medina v. Found. Rsrv. Ins. Co.*, 1997-NMSC-027, ¶ 12, 123 N.M. 380, 940 P.2d 1175; *Melton v. Lyons*, 1989-NMSC-027, ¶ 7, 108 N.M. 420, 773 P.2d 732. This hearing is not an opportunity to relitigate the arbitration case, and is not to be used to rehash the evidence presented to the arbitrator. *See Melton*, 1989-NMSC-027, ¶ 7. Instead, it is limited to any evidence that might bear on the statutory grounds for vacating an arbitration award, as raised in the petition to vacate. *Id.* In this case, the parties and the district court were aware of the hearing requirement, but ultimately no evidentiary hearing was held.

**{13}**    Although there were several hearings, our decision that Petitioner waived an evidentiary hearing in district court is based on the final hearing on September 27, 2023, where the district court sought to clarify the parties' positions on the need for an evidentiary hearing before proceeding to render a decision on the briefs.

**{14}**    At this hearing, the district court, apparently confused by the parties' argument at earlier hearings, inquired directly of the parties as to what evidence they would present if an evidentiary hearing was held. Petitioner's counsel stated that if the court wanted additional examination of case law or help walking through the evidence he could (1) supplement his brief, (2) prepare finding of facts and conclusions of law, (3) prepare a brief that walked the district court through the aspects of the record that Petitioner believed were not considered by the arbitrator, but that (4) he was not asking the district court to do more work. Petitioner's counsel then explicitly waived the occurrence of an evidentiary hearing, telling the court that "if you feel like you have the record in front of you and all the arguments you need, we will step down and allow you to make your decision. But we could kind of give you kind of a guide through some of the evidence, if that, just if that's helpful [inaudible]."

**{15}** Three considerations apply here. First, even statutory and constitutional rights are subject to waiver, if the waiver is knowing and voluntary. *See, e.g.*, *State v. Chavarria*, 2009-NMSC-020, ¶ 9, 146 N.M. 251, 208 P.2d 896 (pointing out that a guilty plea waives statutory and constitutional rights, including the right to appeal). Petitioner waived the evidentiary-hearing requirement in this case by informing the district court that he would "step down" and allow her to make the decision on the current record and arguments.

**{16}** In addition, the "evidentiary hearing" referenced by *Medina* and *Melton*, *see Medina*, 1997-NMSC-027, ¶ 12; *Melton*, 1989-NMSC-027, ¶ 7, suggests a hearing at which evidence is offered by the parties. Here, however, while the parties asserted they had additional arguments, Petitioner's counsel informed the district court that he would walk the district court through the evidence in the record he believed the arbitrator did not consider, but was not asking the district court to take or consider additional evidence. The rote occurrence of an "evidentiary hearing" where no new evidence would be presented was not necessary under the circumstance of this case. We conclude the district court did not err in refusing to perform an empty procedural act. *Cf. Kysar v. BP Am. Prod. Co.*, 2012-NMCA-036, ¶ 16, 273 P.3d 867 (refusing to require a trial that would serve no useful purpose and would waste scarce judicial resources, simply to preserve a right to appeal).

**{17}** Finally, Petitioner has failed to show how he was prejudiced by the failure to hold an evidentiary hearing. In particular, he has not directed our attention to any evidence that he would have offered at such a hearing. Instead, he maintains in conclusory fashion that the failure to hold a hearing "denied Petitioner the opportunity to demonstrate to the [district c]ourt that the [a]rbitrator had: (a) refused to consider material evidence, and manifestly disregarded the law; (b) exhibited evident partiality by summary judgment and other actions; and (c) denied Plaintiff due process for a full and fair hearing of material testimony." These contentions, which are mainly restatements of the statutory grounds of review contained in the UAA, are mere assertions of prejudice that carry no weight in the absence of specifics. *See Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 31, 135 N.M. 423, 89 P.3d 672 (noting that "an assertion of prejudice is not a showing of prejudice" (alteration, internal quotation marks, and citation omitted)). Where no prejudice has been shown, this Court will not find reversible error. *Id.* (stating that "in the absence of prejudice, there is no reversible error" (alteration, internal quotation marks, and citation omitted)).

## B. Refusal to Consider Material Evidence

**{18}** As we noted above, an arbitrator's refusal to consider material evidence is one of the statutory grounds upon which a vacation of an arbitration award can be based. Section 44-7A-24(a)(3). Petitioner makes two main arguments in support of his contention that the arbitrator did so in this case. First, he contends that by granting summary judgment and canceling the scheduled hearing on the merits, the arbitrator refused to consider evidence that Petitioner was planning to present at that hearing. Second, he maintains that, after erroneously determining that Petitioner was not

qualified for his position, the arbitrator refused to consider the evidence in the record concerning Respondent's interference with Petitioner's efforts to obtain funding as well as evidence that younger scientists were treated more favorably than he was.

**{19}**     Petitioner's first argument amounts to a contention that a party can avoid summary judgment by the simple expedient of informing the presiding authority that they are aware of evidence and testimony that they would like to present at a merits hearing. This is not how the summary judgment process works. Once a motion for summary judgment has been filed, the party opposing summary judgment must come forward with evidence in the form of affidavits, depositions, answers to interrogatories, or responses to requests for admission; and this evidence must establish that genuine issues of fact exist that would preclude the grant of summary judgment. *See* Rule 1-056(C), (E) NMRA. It is not sufficient to merely point to evidence or testimony that might be forthcoming at a trial or evidentiary hearing. *See Little v. Baigas*, 2017-NMCA-027, ¶ 6, 390 P.3d 201 ("During summary judgment proceedings, a party cannot rely on allegations of the complaint or argument that facts may exist, but instead must provide evidence to justify a trial on the issues."). A party opposing summary judgment cannot meet their burden "with allegations or speculation but must present admissible evidence demonstrating the existence of a genuine issue of fact requiring trial." *Kreutzer v. Aldo Leopold High Sch.*, 2018-NMCA-005, ¶ 27, 409 P.3d 930.

**{20}**     For example, in this case, Petitioner asserted that he wished to call two Respondent employees, Dr. Paris and Dr. Freese, as witnesses at the hearing, as well as a former employee of Respondent, Todd Ringler. He also expressed a desire to cross-examine John Sarrao and other witnesses. However, Petitioner did not explain to the arbitrator why he could not obtain an affidavit from any of these individuals, or take a deposition of one or more of them. Instead, he speculated that Mr. Ringler might have evidence relevant to the retaliation claim and argued that Dr. Freese and Dr. Paris would present evidence relevant to the ADEA claim. These indications of a desire to in effect hold witnesses in reserve, and then call them at an evidentiary hearing, were not sufficient to require denial of the motion for summary judgment. *See Baigas*, 2017-NMCA-027, ¶ 6; *Kreutzer*, 2018-NMCA-005, ¶ 27.

**{21}**     Petitioner's second refusal-to-consider-evidence contention requires a brief discussion of summary judgment procedure in an ADEA case. In the absence of direct evidence of age discrimination, courts utilize a well-worn framework to determine whether summary judgment is appropriate, called the *McDonnell Douglas* burden-shifting approach. *See, e.g.*, *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 139 N.M. 12, 127 P.3d 548 (addressing a discrimination claim under the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 to -15 (1969, as amended through 2024), and discussing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). Under this approach, an employee claiming discrimination must first establish a prima facie case of discrimination. *Id.* If the employee succeeds in doing so, the burden shifts to the employer to provide a nondiscriminatory reason for its actions. *Id.* Finally, if the employer does so, the burden shifts back to the employee to present evidence that the purported nondiscriminatory reason is a pretext for discrimination. *Id.* In a termination-

of-employment case, the employee establishes a prima facie case by presenting evidence of four factors: (1) they were a member of a protected class; (2) they were qualified to continue working in their position; (3) their employment was terminated; and (4) their position was filled by someone not a member of the protected class. *See Cates v. Regents of N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 17, 124 N.M. 633, 954 P.2d 65.

**{22}** According to Petitioner, what occurred in the arbitration case was as follows: (1) as a person in his late sixties, he was a member of the class protected by the ADEA, and he did lose his position; (2) the arbitrator erroneously found he was not qualified for his position; and (3) the arbitrator then refused to consider Petitioner's evidence regarding two matters—that Respondent prevented him from obtaining funding and treated younger scientists more favorably with respect to funding issues. Although the arbitrator's decision indicates that Petitioner was eminently qualified for his position as a scientist, the arbitrator did ultimately determine that he was unqualified due to his failure to satisfy a requirement of that position—that he obtain funding sufficient to support his work and his unit, either from sources outside LANL or from the internal funding mechanisms available at LANL. The arbitrator therefore found that Petitioner had failed to make out a prima facie case of age discrimination and granted summary judgment.

**{23}** It is important to point out, again, that we are not in a position to review the merits of the arbitrator's decision, either factually or legally. *See AFSCME*, 2012-NMCA-114, ¶ 13. The arbitrator's importation of job performance into the qualifications factor may have been legally suspect, an issue we need not decide; we do note, however, that federal courts often discuss deficient job performance in the context of the "nondiscriminatory reason for the adverse employment action" portion of the burden-shifting framework, rather than as part of the prima-facie-case analysis. *See, e.g.*, *Walkingstick Dixon v. Okla., ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1336 (10th Cir. 2025) (internal quotation marks and citation omitted). The question before us, however, is whether there is any evidence that this claimed error caused the arbitrator to refuse to consider Petitioner's proffered evidence regarding his discrimination claim or his retaliation claim.

**{24}** It should be noted that the evidence concerning alleged funding interference was relevant to the question of whether Petitioner's funding issues were addressed as a matter of qualification for the position or were considered as a potential nondiscriminatory reason for Respondent's actions. In other words, the funding issues, as the explicit justification given by Respondent for terminating Petitioner's employment, were the crux of the entire case, and the arbitrator therefore had every reason to consider all evidence bearing on those issues. As Respondent points out, the arbitrator did not explicitly exclude any of Petitioner's evidence from the case. In addition, Petitioner has not directed our attention to any statements made by the arbitrator indicating that he was refusing to consider evidence offered by Petitioner. Instead, Petitioner relies on assumptions and speculation to argue that such a refusal occurred. He in essence contends that the arbitrator must have refused to consider his evidence concerning Respondent's interference with his funding, and its favorable treatment of

younger scientists, or the arbitrator would not have granted the motion for summary judgment. He also points out that the arbitrator's written decision does not mention the evidence upon which Petitioner relies, which according to Petitioner must mean he refused to consider it. We disagree with Petitioner's arguments.

**{25}** It is apparent that the arbitrator was aware of Petitioner's contention that Respondent interfered with his funding efforts; the arbitration decision specifically, although briefly, discusses the issue. We cannot infer, from the arbitrator's failure to explicitly discuss particular evidentiary items in his decision, that the arbitrator refused to consider them; to do so would be nothing more than speculation. It is just as possible that the arbitrator considered Petitioner's evidence and found it to be insufficient to overcome Respondent's showing. As one example, many of Petitioner's complaints, set out in his affidavit filed in the arbitration proceeding, involve DOE funding and Respondent's refusal to submit his funding proposals to DOE. However, Respondent introduced evidence, which was not refuted by Petitioner with any admissible evidence from persons with direct knowledge, that DOE was no longer interested in funding Petitioner's research. Furthermore, as the arbitrator's decision stated, many of the incidents discussed in Petitioner's affidavit concerned events occurring well prior to November 2018 when Respondent assumed management duties over LANL.

**{26}** Finally, a number of assertions made in Petitioner's affidavit contain hearsay statements allegedly made by other individuals, or refer to supposedly younger scientists without providing evidence of their ages, or make conclusory assertions rather than stating facts. Such evidence is not sufficient to overcome a properly supported motion for summary judgment. *See, e.g.*, *Wood v. City of Alamogordo*, 2015-NMCA-059, ¶ 15, 350 P.3d 1185 (pointing out that a nonmovant in a summary judgment case cannot rely on speculation or conclusions and that affidavits containing hearsay are not sufficient evidence of a fact). By mentioning the above examples, we emphatically do not intend to comment on the legal or factual validity of the arbitrator's decision, or upon the adequacy of Petitioner's evidentiary showing; we mean only to refute Petitioner's argument that the arbitrator must have necessarily refused to consider his evidence.

**{27}** At bottom, Petitioner's argument is a contention that the arbitrator's grant of summary judgment was wrong on the merits, and therefore must be reversed. We are precluded by both statute and case law from taking such action. *See id.*; *AFSCME*, 2012-NMCA-114, ¶ 13.

**CONCLUSION**

**{28}** Based on the foregoing, we affirm the district court's decision in this case.

**{29} IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**